STEWART WILSON, Respondent, v. THE CITY OF FARGO, a municipal corporation, et al, Appellants.

(186 N. W. 263.)

**Courts — statute may not be held unconstitutional unless four Supreme Court judges so decide.**

    1. This action involves the constitutionality of chap. 122, Laws, 1921. It is *held*:

    Inasmuch as two of the judges of the Supreme Court are of the opinion that the act does not violate any provision of the state constitution, it cannot be said that the act is unconstitutional as violative of the state constitution in view of § 89 of the constitution as amended (Article XXV, p. 503, Laws 1919), which provides that in no case shall

any legislative enactment or law of the State of North Dakota be declared unconstitutional unless at least four of the judges of the Supreme Court so decide.

Opinion filed Oct. 31, 1921.

Appeal from the District Court of Cass County; *Cole, J.*

From an order overruling a demurrer to the complaint, defendants appeal.

Reversed.

*W. H. Shure* and *George E. Wallace,* (*B. F. Spalding* and *Wm. Lemke, Atty. General of counsel*) for appellant.

"It is a sufficient compliance with the constitutional requirement if the subject matter of such amendment is germane to the subject matter of of the original act and is within the title of that act." State v. Fargo Bottling Company, 19 N. D. 396; Erickson v. Cass County, 11 N. D. 496; Eaton v. Guarantee Company, 11 N. D. 79.

An act permitting recovery of money paid at an invalid tax sale is germane to the matter of collection of taxes on land by means of sale. Sherwood v. Barnes County, 22 N. D. 310; Paine v. Dickey County, 8 N. D. 581.

An act permitting the sale of intoxicating liquor for certain purposes and prohibiting it for others under regulations, constitutes but one subject. State v. Haas, 2 N. D. 202.

*Engerud, Divet, Holt & Frame,* for respondent.

"No law shall be passed except by a bill adopted by both houses, and no bill shall be so altered and amended in its passage through either house as to change its original purpose." Constitution, § 58; Fillimore v. Van Horn, (Mich.) 88 N. W. 69; State v. Burlington &c (Neb.) 84 N. W. 254; In re House Bill (Colo.) 21 Pac. 472.

The title of a bill must be a constant quantity, not subject to amendment, or at least not subject to such an alteration as will effect a substantial change in it. Irwin v. State, (Tenn.) 93 S. W. 73; State v. Baseball Club (Tenn.) 154 S. W. 1151; Simpson v. Stockyards, 102 Fed. 799;

Railroad Co. v. Smith, 103 Fed. 372; Fillimore v. Van Horn, (Mich.) 88 N. W. 69; State v. Burlington &c (Neb.) 84 N. W. 254.

The term "subject" as used in § 58 and § 61 of the Constitution means the matter to which the statute relates, the purpose sought to be effected by the legislation. 36 Cyc. 1022, Statutory Construction; G. N. Ry. Co. v. Duncan, (N. D.) 176 N. W. 992; Sutherland on Statutory Construction § 83; Matter of Mayer, 50 N. Y. 507; Dorsey's Appeal, 72 Pa. St. 192.

The act must be construed in the light of its general purpose and object, and if so construed, its provisions appear to be in furtherance of one general purpose and plan they will be considered to be germane to one another. State v. Peake, 18 N. D. 101; G. N. Ry. Co. v. Duncan (N. D.) 176 N. W. 992; 1 Sutherland Statutory Construction, § 143; G. N. Ry. v. Duncan, (N. D.) 176 N. W. 992; Johnson v. Harrison (Minn.) 50 N. W. 923.

The different matters incorporated in a bill must be so closely related as to constitute but separate parts of a consistent plan which is readily discernible in the act itself. G. N. Ry. Co. v. Duncan (N. D.) 176 N. W. 992; State v. Nomland, 3 N. D. 427; Richards v. Stark Co. 8 N D. 392; Divet v. Richland Co. 8 N. D. 65; Fitzmaurice v. Wells, 20 N. D. 372; Erickson v. Cass County, 11 N. D. 494, 512.

It is not permissible to enact a law which amends a section by changing only some portion of it, and by publishing only the part or the words which create the change. Copeland v. Price, (Wash.) 67 Pac. 227; In re Buelow, 98 Fed. 86; State v. Guiney, (Kans.) 40 Pac. 926; Douglas Co. v. Hayes, (Neb.) 71 N .W. 1023; Blakemore v. Dolan, 15 Ind. 194; Dodd v. State, 18 Ind. 56; Erickson v. Cass Co. 11 N. D. 494, 512; State v. Fargo Bottling Works, 19 N. D. 396, 410, 411.

GRACE, C. J.  This is an appeal from an order of the District Court of Cass County overruling a demurrer to a complaint. The action is said to be a friendly one brought by the plaintiff as a taxpayer on his own behalf and all persons similarly situated, to restrain a proposed special election in the City of Fargo, called pursuant to chap. 122, Session Laws of 1921, which makes certain amendments to an amendatory act relating to the exemption of property from taxation and which also provides for limitation of tax levies, in that, political subdivisions, are authorized to exceed the limitations specified in said Chapter by twenty-five per cent (25%) upon authorization by a majority of the electors voting at   a

special election. The plaintiff asserts his right to restrain the holding of an election on the theory that chap. 122 is unconstitutional. Several constitutional objections are advanced but the principal one, and those we shall consider are as follows, viz: that during the passage of the bill the purpose was changed in violation of § 58 of the Constitution, which provided that no bill shall be altered and amended on its passage to (through) either House, as to change its original purpose, and that the bill embraced more than one subject in violation of § 61.

We are impelled to give a thorough consideration to and an extended analysis of the statute, in order to arrive at what we believe is the true status as to the validity of the statute, as such validity is challenged by the two provisions of our constitution above mentioned.

Chap. 223 of the Session Laws of 1919 and chap. 122 of the Session Laws of 1921 are both amendments and have become part of an original act viz: that of Revenue and Taxation. This fact is of importance and must be kept in mind while considering the constitutionality of the act under consideration with reference to the sections of the constitution hereinbefore mentioned. The original revenue and taxation act was approved by the Legislature of the State of North Dakota on March 11th, 1890. It is chap. 132 of the Session Laws of that year. It consists, as thus enacted, of 109 sections, all of which are relative to the subject of Revenue and Taxation. § 5 thereof dealt with exemption from taxation of personal property. § 98 thereof dealt with the limitation of taxes by the corporate authorities of various political subdivisions.

It appears therefore that the tax exemption section and the section relative to the limitation of taxation were a part of the original act of 1890. Without tracing every step in its subsequent history suffice it to say, the original Revenue and Taxation Act is found in the C. L. of 1913, largely in its original form, as chap. 34.

§ 5 of the Original Act became in substance § 2078 of chap. 34 and § 98 of the Original Act became in substance § 2148 of that chapter. § 2078 was amended by chap. 223 of the Session Laws of 1919. That chapter reenacted that Section which then passed out of existence and ceased to exist except as to past transactions, and chap. 223 displaced it as part of the Revenue and Taxation Act.

The first contention is, that the purpose of the act, chap. 122 was changed during its passage in the Legislature. We believe when this contention is closely examined it will be found to contain no great merit. A casual glance at this chapter might give the impression that its purpose

was two fold, in that it refers to exemption from taxation and limitation of taxation. But a careful consideration of the title and of the whole of the act leads to the conclusion that the whole subject or object of the act is taxation. Exemption from taxation and limitation of taxation are not incongruous terms. They relate to the same subject or object to wit: taxation and it is our view that change in the bill during its passage, which related to taxation did not change the purpose of the bill for it seems clear that chap. 122 relates to no other subject or object than taxation.

As to the second contention that the act contravenes 61 of the constitution, it may be observed that chap. 223 relates to the subject of taxation. It is true that the term exemption is there used, but its use relates exclusively to the subject of taxation. If the term exemption appearing there, referred to the homestead exemption as defined by law, or to that part of a debtor's property exempt as against the claims of creditors, then that term would not relate to the subject of taxation and it would not in that case be congruous with the term "Limitation of Taxation." But such is not the fact. All of chap. 223 and all of chap. 122 relate exclusively to the subject of taxation and the terms of both we believe are congruous. Assuming that 223 is an original act,—which it is not, but an amendatory act only—it would seem that the amendment 122, is germane to the subject of that act (taxation) and within the title of it.

There is another view that may be mentioned. 122 is not an amendment of an act but an amendment of an amendment. This fact complicates the situation and we have been able to find no case similar in this respect. Taking chap. 34 as the original act relative to Revenue and Taxation and regarding 223 and 122 as in effect amendments thereof for each has become a part thereof, and are additional and supplementary of it, we think the rule would apply, that if the subject or object matter of the amendment is germane to the subject matter of the original act (chap. 34) and within the title thereof (Revenue and Taxation) it is sufficient. In State v. Fargo Bottling Works, 19 N. D. 409, it in substance was held that "If the subject matter chap. 187 (an amendment) is germane to the subject of the law of 1890 (the original act) and is fairly within the title of that act, its title is sufficient, whether or not it would be so standing alone." It would seem quite clear that all of 122 is germane to the subject matter of chap. 34, the original act, and within the title of that act to wit: Revenue and Taxation. That principle is illustrated by other decisions of this court.

In School District No. 94 v. King, 20 N. D. 618 the constitutionality of chap. 106 of the Laws of 1907 was challenged on the ground that it contravened § 61 of the constitution. The act of 1907 was one to amend § 949 of the Revised Codes of 1905 which was "An act to Provide for a Uniform System of Free Public Schools Throughout the State and Prescribe Penalties for Violation of the Provisions Thereof." In that case part of the amendatory act did not affect the rights of the plaintiff or any of the inhabitants of the district. This portion of that act conferred authority upon the County Commissioners to attach certain portions of the School district to a school district of another county. But had the rights of plaintiff been affected by that provision, in view of the construction placed on the remainder of the amendment by the court, there would seem to be no doubt that the court would have upheld the constitutionality of the act in this respect for the same reason that it held that the remainder of the amendment was within the original act. The court there said with reference to the amendment "The title of the act of 1890 (the original act) is sufficiently broad and comprehensive to include § 170 of that act which was the same substantially as § 949 until amended in 1907. The general subject of public schools includes the division of school districts. So in this case it can with as much reason be said that the title of the original Revenue and Taxation Act of 1890 above mentioned, now chap. 34, of the Comp. Laws of 1913, is sufficiently broad and comprehensive to include chap. 122, for all that is in the latter relates to taxation and to no other subject. Reasoning of somewhat similar nature is contained in State v. Fargo Bottling Works, 19 N. D. 396 and Erickson v. Cass County, 11 N. D. 494. In the latter case it was said "The Supreme Court of Missouri in construing a constitutional provision of that state in all respects like § 61 supra, in the City of St. Louis v. Tiefel, 42 Mo. 578-590 said: While the clause was embodied in the organic law for the protection of the state and the legislature, it was not designed to be unnecessarily restrictive in its operations, nor to embarrass legislation by compelling a needless multiplication of separate bills. It was only the intention to prevent the conjoining in the same act of incongruous matters and of subjects having no legitimate connection or relation to each other. If the title of an original act is sufficient to embrace the provisions contained in an amendatory act, it will be good, and it need not be inquired whether the title of the amendatory act would of itself be sufficient. Branden v. State 16 Ind. 197; State v. Meade 71 Mo. 267 is to the same effect. The Constitution of Indiana contains provisions almost identical with §§ 61 and 64. The Su-

preme Court of that state in Branden v. State 16 Ind. 197 held, that, "If the title of the original act is sufficient to embrace the provision in question, it is unnecessary to inquire whether the title of the amendatory act would of itself be sufficient. See, also, State v. Bowers 14 Ind. 195; also Shoemaker v. Smith 37 Ind. 122. The last case is important in holding that the different provisions contained in different sections of an act, all having a common subject are not to be regarded as so many different subjects, but as having references to only one general subject. See, also, Improvement Co. v. Arnold 46 Wis. 214-225; 45 N. W. 971; Phillips v. Town of Albany 28 Wis. 340; Wheeler v. State 23 Georgia 9."

There is another principle that applies. It is stated in 36 Cyc. 1044 as follows: "Statutes are generally valid with titles reasonably apt concerning taxes." In support of this principle in note 99 are cited a long list of cases from various states. It is also to be noticed that the sections amended by 122 are set forth at length as well as all that relates to limitation of taxation and that at the head of the chapter are two words, exemption and limitation, all of which show there was no deception, surprise or fraud possible in the passage thereof. "The courts in a long series of cases have enunciated the general principle that the presumption is in favor of the constitutionality of the statute. This principle has been expressed in many different forms. It has been declared that in no doubtful cases should the court pronounce legislation to be contrary to the constitution; that to doubt the constitutionality of a law is to resolve such doubt in favor of its validity; that all statutes are of constitutional validity unless they are shown to be invalid; and that the courts will resolve every reasonable doubt in favor of the validity of the enactment. It has been said that every intendment is in favor of its validity, and that it must be presumed constitution unless its repugnancy to the constitution clearly appears or is made to appear beyond a reasonable doubt; that it is only when its invalidity is made to appear clearly and plainly and in such manner as to leave no reasonable doubt, that the courts will declare it unconstitutional. Every reasonable presumption must first be indulged in favor of the validity of the act. The opinion has been expressed that the conviction required to overcome the presumption in favor of the statute must be clear and strong and it has been said that a law should never be lightly overthrown or set aside as unconstitutional." 6 R. C. L. § 98 and notes 1 to 12, both inclusive.

For the reasons above stated, among others, and resolving our reasonable doubts in the matter in favor of the validity of chap. 122, we are

unable to say that it is invalid or that it is repugnant to the sections of the constitution above mentioned, and hence we think the plaintiff's action should be dismissed.

ROBINSON, J., concurs.

ROBINSON, J. This is a collusive and friendly suit to annul § 2 of House Bill 25, chap. 122, Laws 1921. The section reads thus:

"The total amount of taxes levied for any purpose, except special levies for local improvements and for the maintenance of sinking funds in any county or political subdivision thereof in any village, town or city within the state shall not exceed an amount equal to one-third of the total combined levies which were made for the years 1918, 1919 and 1920, except that school districts may levy not to exceed 30 per cent in excess of such amount, and provided that any county or political subdivision thereof or any village, town or city may increase such levy in the same proportion as the assessed property valuation increases or has increased over that of the year 1919. Provided, however, that the electors of any county or political subdivision thereof or any village, town or city within the state, may by a majority vote authorize a levy of 25 per cent in excess of this limit."

The act was passed with an emergency clause. In the Senate the vote was: Yeas, 37; nays 10. In the House the vote was: Yeas 109; nays, 0; absent, 3. Thus the bill was passed and the title was agreed to. The immediate cause of the act was a general uproar of the people against the excessive tax levies by the several municipalities of the state. In November, 1919, in Towner county, there had been a special election for the office of senator. The issue was on the excessive tax levies and the League candidate was defeated. Then, at a special session of the legislature on December 11, 1919, there was passed House Bill 59, chap. 65, reducing the state tax levies for the year twenty-five per cent, but that reduction was far from being satisfactory, so at the general election held in November, 1920, the main issue continued to be on the excessive tax levies, for which the Nonpartisan League was held responsible. The result was that the League was nearly defeated. In the Senate and in the House the members were about equally divided. Then, in March, 1921, to comply with the public demand for a limitation of the tax levies the bill here in question was passed as above stated by the unanimous vote of the Senate and the House. The objections to the act here in question is that the title embraces more than one subject and that on its passage

the bill was amended so as to change its original purpose, contrary to §§ 58 and 61 of the constitution. There are several other similar sections which relate not to the actual passage of bills, but to the manner of passing them. Thus it is provided:

§ 63. Each bill shall be read three times, but the first and second readings, and those only, may be on the same day.

§ 66. The presiding officer of each house shall, in the presence of the house of which he presides, sign all bills and joint resolutions.

Those are merely rules of procedure addressed to the legislature, and all such rules are habitually disregarded, and though the constitution declares that all its provisions are mandatory, it does not in substance or effect provide that any statute shall be held void because of a failure to observe the constitutional rules of procedure. It is true that because of such failure the courts have often assumed the power to declare statutes void, and because of that arrogant assumption we have the recent amendment, that: "In no case shall any legislative enactment or law be declared unconstitutional, unless at least four of the judges shall so decide." That amendment is a rebuke to the courts having gone too far in declaring statutes to be void because of defects in the title or the procedure. Now if the courts do persist in declaring such statutes to be void, we may look for an amendment that no court shall have power to declare any statute void. Each member of the legislature, as well as each judge, takes an oath to support the constitution of the state and faithfully to discharge the duties of his office. In their official action, and especially in matters of procedure, the members of the legislature may err, and so may the judges. Neither is infallible. Neither has a right to assume all wisdom or to impute to the other bad faith or a want of common sense. Manifestly it is in no way seemly or proper for a justice of the peace, a trial judge or even a majority of the Supreme Court, to override and declare void a statute passed by the unanimous vote of the legislature, and pursuant to a great popular demand, because forsooth of a mere procedural defect in the passage of the bill. Certain it is the constitution was not framed or passed with a view to annul such acts. It was framed and submitted in 1889. The framers were men of such capacity as are commonly sent to the legislative assembly, and they did not assume to know it all or to declare that any statute should be held void unless passed in a particular manner. Indeed, the fair inference is to the contrary, because while the constitution gives the above and several other rules of procedure, it expressly declares:

Each House shall have power to determine the rules of proceeding.

§ 49. Each house shall keep a journal of its proceedings.

§ 50. The sessions of each House and the Committee of the whole shall be open.

§ 51. Neither House shall, without the consent of the other, adjourn for more than three days.

§ 53. The Legislative Assembly shall meet at the seat of government at twelve o'clock noon on the first Tuesday after the first Monday in January of the year following the election of the members.

Now, what if the legislature should be an hour or a day late in meeting? What if either house should adjourn for more than three days without the consent of the other; what if it failed in any other respect to observe the stated procedure, does that render void an act that is passed by the unanimous vote of each house and approved by the governor? Surely all such rules of procedure, whether in the constitution or out of it are addressed to the members, who may change and vary, or, by general consent, disregard such rules. The rule that all bills shall be printed and a copy laid on the table of each member gives him full opportunity to read and understand each bill regardless of its title. The people, their lawmakers and their procedure has greatly improved since 1889 when they swallowed the constitution in bulk as the whale swallowed Jonah, and it well behooves courts to keep up with the march of time and to be ever ready to give a good reason for their decisions. Reason is the soul of the law, and when the reason of a rule ceases, so does the rule itself.

Order reversed.

BIRDZELL, J. (Speaking for the majority of the court). Immediately after the submission of this case, the members of the court, recognizing the practical necessity for an early decision, carefully considered the questions involved and within a few days after the arguments, a tentative opinion was prepared by the writer of this opinion. The controlling principles therein stated were promptly agreed to by a majority of the judges. Later, Mr. Chief Justice Grace and Mr. Justice Robinson, filed opinions upholding the constitutionality of the act in question. Under § 89 of the constitution as amended and under the rule of decision in such cases announced by this court in Daly v. Beery 45 N. D. 287, 187 N. W. 104, the votes of the two members control the decision. The majority nevertheless regards it as a duty to set forth the reasons why the act should be held unconstitutional and to add appropriate comments upon what they regard

as the erroneous principles applied by the controlling minority. The original proposed opinion is as follows:

"This is an appeal from an order entered in the District Court of Cass County overruling a demurrer to a complaint. The action is brought by the plaintiff as a tax payer, on behalf of himself and all persons similarly situated, to enjoin a proposed special election in the City of Fargo. The election was called pursuant to chap. 122, Session Laws of 1921. This chapter makes certain amendments to the statutes relating to the exemption of property from taxation and provides for the limitation of tax levies in the manner to be hereinafter stated. Political subdivisions are authorized to exceed these limitations by twenty-five percent, however, if the proposition is favored by a majority vote of the electors. It was to secure this expression of the voters that the special election sought to be enjoined herein was called. The plaintiff and respondent bases his right to restrain the holding of the election on the unconstitutionality of the statute. The objections urged are: First, during the passage of the bill, the purpose was changed in violation of § 58 of the constitution which declares that no bill shall be so altered and amended on its passage through either house as to change its original purpose; second, it was passed in violation of § 63, which provides that every bill must be read through several times; third, the bill embraces more than one subject in violation of § 61, and fourth, that the bill amended and revised an existing law without incorporating the entire section amended as required by. § 64 of the constitution.

"The act in question as originally introduced was house bill Number 25, entitled "A Bill For an Act to Amend and Re-enact § 2078, the Comp. Laws of North Dakota for the Year 1913 and chap. 223 of Session Laws of North Dakota for the Year 1919, Relating to the Exemption of Property from Taxation." The House Journal shows the passage of this bill, with slight amendments not at present material, but without sufficient votes to enact the emergency clause. With the emergency clause stricken, the bill was messaged to the Senate. While pending there, it was amended by striking out everything after the words, "A Bill," and inserting, substantially, the contents which now appear as chap. 122 of the Session Laws of 1921. The title of the inserted measure is as follows:—"A Bill for an Act to Amend and Reenact Subsection 11 and Subsection 15 of chap. 223, Session Laws of North Dakota for the Year 1919, Relating to Taxation and More Specifically to the Exemption of Property from Taxation; and Providing for a Limitation of Tax Levies Upon all Tax-

able Property." It will be seen that the last clause of the title introduces for the first time the subject of the limitation of taxes levies. § 1, of the bill deals with the subject of exemptions by amending two paragraphs or subsections of the preexisting statute, chap. 223 of the Session Laws of 1919. It does not purport to reenact the section in its entirety in the amended form—the remaining paragraphs or subsections of the statute not being incorporated in the bill. § 2 of the bill embraces a subject matter that formed no part of the original bill as it passed the house. It limits the amount of taxes that may be levied in political subdivisions to one-third of the combined levies for the years 1918-19-20 and provides that this limitation may be exceeded by twenty-five percent if authorized by a majority vote of the electors of political subdivisions.

"Reading and comparing House Bill twenty-five as originally introduced with the statute which it was designed to amend, the purpose of the bill is so clear that it is not capable of being misunderstood. It was designed for the sole purpose of removing the exemptions from structures and improvements on agricultural lands, city, town and village lots, household goods and furnishings, clothing and personal belongings, mechanics' and farmers' tools, implements and equipment. The bill was so framed that this change would be effected by dropping from the law paragraphs or subsections numbered 10 to 15, both inclusive; that is, the entire section was to be amended and reenacted omitting the subsections embracing the specific exemptions stated. The act did not relate in any manner to the subject of levying taxes for the support of the various political subdivisions. When the bill was amended in the Senate, the entire subject matter originally contained in the body of the bill was stricken out and there appeared in its stead a re-statement of two subsections which would have been entirely repealed had the original bill passed. These are subsections 11 and 15. They relate respectively to structures and improvements on village, town and city lots and to the tools, implements and equipment of the farmer. The Senate amendment reduced these exemptions in each instance from $1000.00 to $500.00. This is the only part of the bill as amended in the Senate which deals with the subject matter contained in the original bill as introduced and passed in the House. To state the matter succinctly, the relation between the original bill as passed by the House and the bill as amended in the Senate and as ultimately passed both houses, is this: The original bill would have repealed entirely the exemptions in favor of improvements implements and tools along with other exemptions, whereas the amended bill merely

reduced 50%, the exemptions in favor of the structures and improvements and tools, implements and equipment of farmers. Thus far, the amended bill relates to the same subject as the original bill and the prime purpose of the original bill; namely, that of reducing exemptions from taxation is not altered. The amendment merely reflects a compromise from the extreme position of the original bill. But the amended bill also embraces a subject matter introduced in the Senate for the first time and after the bill had passed the House—that of the limitation of tax levies by political subdivisions. There is no direct relation between the provisions of law relating to the exemption of items of property from taxation and the limitation of levies by political subdivisions. So far as the subject matter is concerned, it would have been as appropriate to have tacked the levy limiting feature upon a bill providing for the taxing of itinerant venders as upon the bill in question. There was nothing in the original title to the bill to convey the remotest idea that under that title the legislature would attempt to restrict the power of governmental subdivisions in the matter of levying taxes. The title was specific, not general. It conveyed no more hint of legislation upon this subject than of legislation regulating the salaries of school teachers or policemen. If the limitation on the power of local subdivisions to levy taxes is embraced within the scope of the title of the original bill or within the purpose of the legislation sought to be enacted under that title, any subject, however remotely connected with the public revenues, could have been included. The constitutional requirements of singleness of subject and constancy of purpose exist and are favored to the end that the members of the legislature and the public may be apprised of the exact character of pending legislation and that every legislative proposition shall be considered on its own merits, rather than be compromised by an artificial attachment to a foreign subject matter. The meaning of these constitutional provisions is so well understood that discussion is not required to clarify it. We are clearly of the opinion that the act in question is void in so far as it relates to the subject of limitation of levies in political subdivisions, both for the reason that the purpose of the legislation was changed during passage and that the legislation deals with two distinct subjects. These subjects clearly are not related to a consistent single purpose reflected in the legislation itself, as was the case in Great Northern Ry. Co. v. Duncan 42 N. D. 346, 176 N. W. 992. These provisions of the constitution are mandatory and it is the sworn duty of the members of this court to uphold them. It follows that

there is no law under which the special election may be held and that the order appealed from must be affirmed.

"The effect of the statute in so far as it relates to the question of exemptions is neither involved nor considered and no opinion is expressed thereon."

The opinion of Mr. Justice Robinson argues that because excessive taxes had become a political issue, the legislature was not bound to observe constitutional requirements in the passage of legislation to relieve the situation, and that, if bound in any way to observe such requirements, the failure to do so should be overlooked in view of the concurrence being unanimous in one body and nearly so in the other. The further argument It will readily be perceived that this logic strikes out of the constitution provisions with reference to the manner in which adjournments may be taken, etc., which must of necessity be of a directory character, it follows that all requirements as to the manner of passing legislation are directory. It will readily be perceived that this logic strikes out of the Constitution that portion of the Bill of Rights which is contained in § 21 and which reads: "The provisions of this constitution are mandatory and prohibitory unless, by express words, they are declared to be otherwise." This is stricken out in so far at least as it has any application to legislation. It is a well established principle of constitutional law that the courts will not interfere with the legislature in the performance of legislative functions nor direct how they are to be performed. From this it necessarily follows, under our system of government through coordinate branches, that those who are injured by the failure of the legislature to observe the mandatory requirements laid down in the constitution can only seek relief in the courts after the legislative act is completed. If relief be then denied on the pretext that provisions which are expressly mandatory and prohibitory are directory merely, the constitution is reduced to a mere scrap of paper. It no longer stands as the fundamental law of the state. Its protective features are in reality but a "delusion and a snare." And if the doctrine of this opinion is to become the controlling principle of constitutional law in this state the constitution should be repealed in toto as a document inimical to the public welfare on account of the false hopes it inspires and the false security it gives to individual rights against governmental encroachment. The whole history of our constitutional experience will be searched in vain to find an instance where legislative attempts to settle political issues or unanimity of action on a given subject has been

judicially recognized as a reason for subverting the plain language of the fundamental law. Has the day of actual legislative supremacy arrived? Are the Bill of Rights and the constitution no longer "the law of the land?"

It may be true that the amendment to § 89 of the constitution requiring the vote of four judges of this court to determine that an act of a legislative assembly is unconstitutional, evidences a desire on the part of the people to accept more completely than they have in the past, legislation at its face value; but by the very fact that the people in the constitution require four of the five judges to declare an act unconstitutional they recognize as a judicial function the determination of constitutional questions. This court cannot evade its grave responsibility under this or any other section of the constitution by a resort to homilies on the duty of courts to keep up with the march of time.

In passing upon constitutional questions a court is of course reluctant to determine that the legislature has transgressed mandatory constitutional provisions and it should never do so, except where the violation is clear. Even then, it acts with a due sense of the delicacy of the situation. It should not be deterred in its action, however, by the feeling that it is unseemly for it to declare the law which plainly exists as against void action of the legislative assembly. In this connection a striking inconsistency is to be noted in the opinion of Mr. Justice Robinson. It is there regarded as unseemly for a court to uphold the constitution against void action of the legislature as involving an imputation of "bad faith or want of common sense" on the part of members of the legislative assembly. But there is no hesitancy in the same opinion to declare that every member of the assembly habitually violates his oath of office through the failure to observe constitutional requirements in the passage of measures. In determining a law to be unconstitutional, this court obviously does not impugn either the "good faith" or the "common sense" of the legislature, nor does it even inquire into its motives, but the same dignified respect that dictates a reluctance to interfere with the action of another governmental department upon such a serious matter prompts the majority of this court, at least, to refrain from wholesale characterization of the members of a coordinate branch of the government as deliberate perjurers.

The division of opinion between the majority and the minority members of the court upon the legal principles involved may doubtless best be illustrated by considering the principles stated and applied in the opinion of Mr. Chief Justice Grace. In that opinion, House Bill 25 (which be-

came chap. 122 of the Session Laws of 1921) is shown to be an amendment (or amendments) of chap. 132 of the Session Laws of 1890 relating to revenue and taxation. The act of 1890 was entitled, "An Act Prescribing the Mode of Making Assessments, and the Levy and Collection of Taxes, and for Other Purposes Relative Thereto." It is pointed out that under this title the legislature provided in one section for certain exemptions from taxation and in another dealt with the limitation of levies by political subdivisions. It is said that as the original bill (House Bill 25) relates to taxation and as the completed act (chap. 122, Session Laws 1921) likewise deals with this general subject to the extent of amending parts of the law relating to revenue and taxation, the purpose of the bill was not changed during passage because it still relates to taxation. The fallacy of this reasoning we think becomes at once apparent upon considering its logical consequences. In providing originally, for instance, as in chap. 132 of the laws of 1890, a complete scheme for the assessment, levy and collection of taxes it would obviously be necessary to deal with every step required to bring about the ultimate consummation—money in the treasury. The scheme would necessarily embrace the manner of assessment—looking toward equality, reasonable levy—requiring limitation, and remedies for collection to the end that the scheme may be complete. It deals with subject matter parts of which for other purposes are wholly remote from each other. For instance, one section makes the taxes on bank stock a lien on dividends; another provides how the State Board of Equalization shall be constituted. One section authorizes the auditor to demand a fee of twenty-five cents for each deed or certificate of sale for delinquent taxes; another requires the assessor to designate the number of the school district in which each person assessed is liable for a tax. Following the logic of the opinion of the Chief Justice, if a bill were introduced to amend the section which provides that the tax on bank stock is a lien on the dividends it could be converted into an act changing the personnel of the State Board of Equalization, and vice versa. Or if a bill be introduced as a bill to amend the section relating to the county auditor's duties in connection with tax sale certificates, it could be converted into an act regulating the duties of assessors with regard to the assessment of property. Could it with any reason be said that in the instances supposed the purpose of the legislation would not be changed? The majority of this court is utterly unable to follow reasoning leading to any other result.

How far would the reasoning of the opinion of the Chief Justice ex-

tend? If it is applicable to the code of revenue and taxation to the extent that a bill introduced for the purpose of modifying one provision of such code may be later changed to modify any other provision of the same code without change of purpose, it would seem equally applicable to any code. This holding must be further examined in the light of its consequences. If it is followed in the future by two members of this court, it means that § 58 of the constitution is practically nullified in so far as future legislation may pertain to our existing statutory law. In 1895, the legislature approved the work of a code commission by passing as bills seven codes prepared by it, each code being embraced in a separate bill under an appropriate title. No session of the legislature has been held since the passage of these codes (which became the Revised Codes of 1895) in which bills were not introduced to amend one or more sections of them. If the rule stated in the opinion under consideration be sound any act to amend any section of any one of these codes could readily have been converted at any time during passage into an act to amend any other section of the same code without changing its purpose. And it would make no difference how far remote the subject matter of the two proposals might be, so long as that subject matter was appropriately contained in the particular code. Thus, a bill to amend a section vesting certain appointive power in the governor might be changed to one regulating the boundaries of school districts without changing its purpose; because, forsooth, both matters have, during the history of legislation, been deemed to be properly included in one bill when a former legislature undertook the ambitious project of revising the codes. Surely, the test as to whether or not the purpose of legislation is changed during passage is not whether the original bill and the bill as passed might both be connected with some broad subject that would make it possible or even appropriate to deal with both subjects under one title in some conceivable major scheme of legislation! We confidently assert that such a test is without authority in constitutional commentaries or precedents. It practically deprives § 58 of all the meaning it ever had. It takes from the people the protection that an observance of its requirements would give. It makes possible all the mischief that this provision of the constitution was designed to prevent, as under this holding most any innocent title—innocent because it serves notice of a very limited subject matter of proposed legislation—is converted into a veritable dragnet for drawing into the legislative whirlpool a vast quantity of

proposed measures of which the public, or even the members of the legislature themselves, can have no notice prior to the third reading of a bill. The majority of the members of this court regard the decision as mischievous in the extreme.

The opinion under consideration, following much the same line of reasoning, also holds that the title of the act is not duplicitous within § 61 of the constitution. In our opinion it requires no further discussion to demonstrate the fallacy of this holding, but we must likewise take note of its consequences. Under it omnibus legislation of every character is invited. Members of the legislature can now constitutionally tack on to a bill relating specifically to any given subject, additional matter without end and separate proposals without number so long as they all relate to some broad subject such as taxation, civil procedure, criminal procedure or the like, and the members will be constantly confronted with the alternative of voting against legislation they desire or, to use a figure applied by our associate, of swallowing the act whole as the whale swallowed Jonah. It was the purpose of § 61, of the constitution to prevent the legislature from effectively adopting any such procedure as this; but now that it is judicially recognized, the clear purpose of § 61 is thwarted and omnibus legislation may well become the rule. It is not difficult to tack on to legislation dealing with one specific subject other proposals that may be linked with the first under some broad general subject. After all, how much legislation is ever proposed that is not in some manner related to something that has gone before? To say that, this generic relationship may be seized upon to establish singleness of subject where two or more distinct legislative proposals are contained in the same bill—where the proposals are in no manner connected with any consistent purpose discoverable in the bill itself—therefore, is to practically deny the possibility of having more than one subject.

Thus § 61 of the constitution, too, is effectually deprived of all the meaning it ever had. The rule laid down in this opinion if consistently followed by two members of this court, also takes from the people the protection that an observance of § 61 would give. It makes possible all the mischief that this section was designed to prevent. If those who propose to amend a section of the law relating to the exemption of property from taxation cannot have that proposal considered on its merits except as it is linked with a proposal to limit the amount of taxes that may be levied by the political sub-divisions of the state, what other

obstacles may not be thrown in the way of considering other distinct legislative proposals upon their merits? The legitimate fruits of this decision appear to us to be omnibus and log-rolling legislation without end.

A word as to the authorities cited in the opinion of Mr. Chief Justice Grace. An examination of them will, we are confident, disclose that they have no application to the case in hand. The principle applied in the cases cited, is familiar and sound. As we understand it, it is this: That where the title of an amendatory act does not indicate the subject of the amendment further than by reference to the act amended and to declare the purpose to amend, the title is sufficient, provided the subject matter of the amendment is properly one to be embraced under the title of the act amended. Thus, in amending a section of the prohibition law defining intoxicating liquors, it was held proper to make any definition that would have been appropriate under the original measure under going amendment and that it was not necessary to state in the title of the amendatory act the exact character of the amendment. State v. Fargo Bottling Works, 19 N. D. 396. See, also, Erickson, et al. v. Cass Co. et al. 11 N. D. 494. In the opinion of the majority, this principle does not aid a duplicitous title nor render valid legislation which results from a clear change of purpose from that originally evidenced by the bill. It does not sustain legislation that goes beyond the title of the amendatory act considered in its relation to the parts amended. Dolese et al. v. Pierce 124 Ill. 140. It only supplies a defect in a title which is apparent rather than real, and this it does by referring to the title of the act amended. The question before us is not one of the sufficiency of the title at all, but of duplicity of subject matter and change of purpose. If a bill be introduced for the purpose of amending a given section of some pre-existing chapter and if it emerges from the legislature as a bill to amend an entirely different section of the same chapter and one having no logical connection with the first proposal, the purpose is clearly changed notwithstanding the two sections were originally parts of the same act. And if a bill be introduced relating to subjects so clearly distinct as the compensation of assessors and the rate of interest payable on tax certificates, the subject is none the less duplicitous because they have in the past been dealt with in a single act under an appropriate title prescribing a revenue and taxation code.

Upon other occasions the minority members, and particularly Mr. Jus-

tice Robinson, have voiced sentiments concerning the questions in hand. that seem to us to be altogether at variance with the views expressed in this case. In McCoy v. Davis 38 N. D., 328 164 N. W. 951, Justice Robinson, in a dissenting opinion, aptly states, (p. 339, Official Reports) "§ 61 *of the Constitution is mandatory.* Under it, every bill for an act must embrace only one subject, which must be expressed in its title. The title of an act must go with it from the beginning to the end, so as to give notice to the law makers and the people, of the subject and purpose of the act." See also, Robinson J. in State ex rel, Gaulke v. Turner, 37, N. D. 635-670, State ex rel Fargo, v. Wetz 40 N. D. 299-337, 176 N. W. 992 and Great Northern Railway Co., v. Duncan 42 N. D., 346. In the latter case, Justice Robinson asserted that the title of the act manifestly embraced four subjects where it included the limitation of tax levies, restriction of debt limits and regulated the salaries and duties of officers which were dependent upon assessed valuation. This dissenting opinion evidently expressed the sentiments of Mr. Justice Grace for he concurred in the result. The subject matter of that act, as viewed by the majority of the court, disclosed a single purpose on the part of the legislature to preserve normal limitations and salaries during a period of anticipated higher assessed valuation. If the subject were in fact duplicitous as there held by the minority, we are at loss to understand how the subject in the case at bar can be regarded as single.

The majority of this court is of the opinion that the act is clearly unconstitutional, for the reasons originally stated.

CHRISTIANSON and BRONSON, JJ., concur.