[File No. 6360.]

STATE OF NORTH DAKOTA, EX REL. P. O. SATHRE, Attorney General, Appellant, v. BOARD OF UNIVERSITY AND SCHOOL LANDS OF THE STATE OF NORTH DAKOTA, and H. B. Hanson, State Land Commissioner, Respondents.

(262 N. W. 60.)

Opinion filed June 29, 1935.

*P. O. Sathre,* Attorney General, and *Charles A. Verret,* Assistant Attorney General, for appellant.

*J. A. Heder,* for respondents.

CHRISTIANSON, J.  The sole question involved in this controversy is the constitutionality of Senate Bill No. 26, Laws 1935 (chap. 255). The statute in question was enacted by the last legislative assembly and is entitled: "An act to provide for the scaling down and discounting of past due interest on loans made by the Board of University and School Lands."

The act (aside from repeal and emergency provisions) reads as follows:

"That whereas the farming industry in the State of North Dakota has suffered many serious setbacks in the past few years and the value of farm land, on account of the depression and general condition of the times under which we are living, has greatly depreciated; and, whereas, it has been impossible for many of our best farmers to make payment upon the lands purchased from the Board of University and School Lands of this State, or to pay interest upon the loans borrowed from such Board, now, therefore, it is hereby provided that from and after the passage and approval of this Act, the Board of University and School Lands shall be authorized, through its proper officials, to reduce, scale down, or throw off the interest that may be due upon any land contract or real estate mortgage, or rentals, to the end that justice may be done in dealing with our farmers and to enable the farmers indebted

to the Board of University and School Lands to pay their debts and retain their property."

This action was instituted to prevent the Board of University and School Lands from exercising the power which said Senate Bill No. 26 purports to confer upon it, and to enjoin it from remitting certain past due interest on a first mortgage on real property held by the Board of University and School Lands.

It is alleged in the complaint that applications have been presented to the Board of University and School Lands asking it to reduce and scale down accrued and delinquent interest on certain real estate mortgages, and that said Board is about to and will "accept from debtors of mortgages securing the payment of investments of permanent school funds in this state less than the interest in full accrued thereon."

It is further alleged that "said defendants have no authority to accept in payment of any mortgage due the State of North Dakota as security for investment of the permanent school funds of this State under the control of said defendants any sum less than the total amount due thereon on the date of the payment thereof for principal and interest according to the terms of said mortgages and to scale down any part thereof, either of principal or interest, and that Senate Bill No. 26 on the authority of which the defendants threaten to act in granting all or any of the applications aforementioned is unconstitutional and null and void for the following reasons:"

(1) That it violates subsection 27, § 69 of the State Constitution, which provides that the legislative assembly shall not pass any local or special laws relinquishing or extinguishing in whole or in part the indebtedness, liability or obligation of any corporation or person to the state or to any municipal corporation therein.

(2) That it violates § 154 of the State Constitution, which requires that all interest accrued from the permanent school funds of the state shall be faithfully used and applied each year for the benefit of the common schools of the state and directs that no part of that fund shall ever be diverted from this purpose or used for any purpose whatever other than for the maintenance of the common schools for the equal benefit of all the people of the state.

(3) That it violates the provisions of § 159 of the State Constitution in that it permits the application of part of the funds entrusted to the

Board of University and School Lands "to objects other than the specific object of the original grants which created said funds."

(4) That it violates § 185 of the State Constitution as amended, which provides that neither the state nor any political subdivision thereof shall make donations to or in aid of any individual, association or corporation, except for the reasonable support of the poor.

The plaintiff prays judgment that said Senate Bill No. 26, Laws of 1935, be adjudged to be unconstitutional and void and that the defendants be enjoined from performing any act authorized to be performed under the terms and conditions of said statute.

The defendants demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was sustained and the plaintiff has appealed.

The sole question presented for determination on this appeal is whether said Senate Bill No. 26 is violative of any of the provisions of the Constitution invoked by the plaintiff. On this appeal we are concerned only with whether the Board of University and School Lands in any case may exercise the power which said Senate Bill No. 26 purports to confer upon said Board; and we are not concerned with whether the applicant referred to in the complaint is entitled to have the interest on his mortgage reduced or scaled down.

The Board of University and School Lands was created by the State Constitution and the powers and duties of the Board are delineated therein. In the Enabling Act the United States granted to the State of North Dakota large tracts of land for the support of the common schools of the state, and granted additional tracts of land for the support of certain charitable institutions and certain institutions of higher learning. (Enabling Act, §§ 10–17.) The framers of the Constitution accepted the grants on the condition on which, and for the purposes for which, they were made. The framers of the Constitution deemed it wise to provide in the Constitution for the Board that should be entrusted with the duties and vested with the power of administering the property and funds thus entrusted. They provided:

Section 153. "All proceeds of the public lands that have heretofore been, or may hereafter be granted by the United States for the support of the common schools in this state; all such per centum as may be granted by the United States on the sale of public lands; . . . and

all other property otherwise acquired for common schools, shall be and remain a perpetual fund for the maintenance of the common schools of the state. It shall be deemed a trust fund, the principal of which shall forever remain inviolate and may be increased but never diminished. The state shall make good all losses thereof."

Section 154. "The interest and income of this fund together with the net proceeds of all fines for violation of state laws, and all other sums which may be added thereto by law, shall be faithfully used and applied each year for the benefit of the common schools of the state, and shall be for this purpose apportioned among and between all the several common school corporations of the state in proportion to the number of children in each of school age, as may be fixed by law, and no part of the fund shall ever be diverted even temporarily, from this purpose or used for any other purpose whatever than the maintenance of common schools for the equal benefit of all the people of the state; . . ."

Section 156. "The superintendent of public instruction, governor, attorney general, secretary of state and state auditor shall constitute a board of commissioners, which shall be denominated the 'Board of University and School Lands,' and subject to the provisions of this article and any law that may be passed by the legislative assembly, said board shall have control of the appraisement, sale, rental and disposal of all school and university lands, and shall direct the investment of the funds arising therefrom in the hands of the state treasurer, under the limitations in § 160 of this article." (Section 160, North Dakota Constitution, refers to the appraisal and sale of the lands.)

Section 159. "All land, money or other property donated, granted or received from the United States or any other source for a university, school of mines, reform school, agricultural college, deaf and dumb asylum, normal school or other educational or charitable institution or purpose, and the proceeds of all such lands and other property so received from any sources, shall be and remain perpetual funds, the interest and income of which together with the rents of all such lands as may remain unsold, shall be inviolably appropriated and applied to the specific objects of the original grants or gifts. The principal of every such fund may be increased but shall never be diminished, and the interest and income only shall be used. Every such fund shall

be deemed a trust fund held by the state, and the state shall make good all losses thereof."

Section 162. "The moneys of the permanent school fund and other educational funds shall be invested only in bonds of school corporations within the state, bonds of the United States, bonds of the state of North Dakota or in first mortgages on farm lands in the state, not exceeding in amount one-third of the actual value of any subdivision on which the same may be loaned, such value to be determined by the board of appraisers of school lands."

The Board of University and School Lands invested a large amount of the permanent fund under its control in first mortgages on farm lands in North Dakota. The reports of the Board show that approximately ten million dollars are invested in such mortgages, exclusive of investments represented by mortgages that have been foreclosed and where the lands have become the property of the Board of University and School Lands.

The question presented in this case is whether Senate Bill No. 26, Laws 1935, violates subsection 27, § 69, and/or §§ 154, 159 and 185 of the State Constitution.

It is elementary law that where the constitutionality of a statute is drawn in question he who alleges it to be unconstitutional must be able to point to the particular constitutional provision that has been violated. State ex rel. Linde v. Taylor, 33 N. D. 76–86, 156 N. W. 561, L.R.A.1918B, 156, Ann. Cas. 1918A, 583. The courts invariably "approach constitutional questions with great deliberation, exercising their power in this respect with the greatest possible caution, and even reluctance" and it has repeatedly been announced that the courts "should never declare a statute void, unless its invalidity is, in their judgment, beyond reasonable doubt." 6 R. C. L. pp. 74, 75.

In State ex rel. Linde v. Taylor, 33 N. D. 76, 85, 86, 156 N. W. 561, L.R.A.1918B, 156, Ann. Cas. 1918A, 583, this court said:

"Every reasonable presumption is in favor of the constitutionality of a statute enacted by the legislature. 8 Cyc. 801; O'Laughlin v. Carlson, 30 N. D. 213, 152 N. W. 675. This presumption is conclusive, unless it is clearly shown that the enactment is prohibited by the Constitution of the State or of the United States. Cooley, Const. Lim. 7th ed. 242; 8 Cyc. 801. The only test of the validity of an

act regularly passed by a state legislature is whether it violates any of the express or implied restrictions of the State or Federal Constitutions."

"This principle has been expressed in many different forms. It has been declared that in no doubtful cases should the court pronounce legislation to be contrary to the Constitution; that to doubt the constitutionality of a law is to resolve such doubt in favor of its validity; that all statutes are of constitutional validity unless they are shown to be invalid; and that the courts will resolve every reasonable doubt in favor of the validity of the enactment. It has been said that every intendment is in favor of its validity, and that it must be presumed constitutional unless its repugnancy to the constitution clearly appears or is made to appear beyond a reasonable doubt; that it is only when its invalidity is made to appear clearly and plainly and in such manner as to leave no reasonable doubt, that the courts will declare it unconstitutional. Every reasonable presumption must first be indulged in favor of the validity of the act." 6 R. C. L. § 98.

The people of this state have expressly provided in the Constitution "that in no case shall any legislative enactment or law of the state of North Dakota be declared unconstitutional" unless four of the five judges of the Supreme Court shall so decide. N. D. Const. § 89, as amended, article 25, Amendments.

The wisdom, necessity or expediency of legislation are matters for legislative, and not for judicial, determination. It is presumed that the legislature informs itself on the subject covered by a statute enacted by it "and a statute which violates, neither expressly nor by necessary implication, any constitutional provision is itself conclusive evidence of its propriety and justice." 8 Cyc. 804, 851; State ex rel. Linde v. Taylor, 33 N. D. 76, 156 N. W. 561, L.R.A.1918A, 156, Ann. Cas. 1918A, 583.

Bearing these principles in mind we approach the questions presented for determination in this case.

(1) It is first contended that the statute violates subsection 27 of § 69 of the State Constitution. The provision reads as follows:

"Section 69. The legislative assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: . . .

27. Relinquishing or extinguishing in whole or in part the indebted-

ness, liability or obligation of any corporation or person to this state, or to any municipal corporation therein. . . ."

The members of the court are all agreed that this contention is not well founded.

Within the purview of section 69 of the Constitution a "special law" is one which relates only to particular persons or things of a class, as distinguished from a "general law," which applies to all things or persons of a class (4 Words & Phrases, 2d Series, pp. 635, et seq.; 36 Cyc. 986; 25 R. C. L. p. 813), and a "local law" is one which applies to a specific locality or spot, as distinguished from a law which operates generally throughout the entire state. Gray v. Taylor, 227 U. S. 51, 57 L. ed. 413, 33 S. Ct. 199; 25 R. C. L. p. 814; 3 Words & Phrases (2d Series), p. 168; State v. First State Bank, 52 N. D. 231, 202 N. W. 391.

The statute in question here is neither special nor local. It is general. It confers a general power upon the Board of University and School Lands. It is true the Board becomes vested with a power under which it may scale down interest on certain mortgages and refuse to do so on others but that does not result in the law being either special or local. Precisely, the same condition exists so far as concerns making loans by the Board of University and School Lands. In such case the Board may make a loan to one person and refuse to make a loan to another. As between bond issues of different counties or municipalities it may determine to purchase one and refuse to purchase the other. In fact it may purchase the bond issue from a county whose financial condition is less favorable than that of another county whose bond issue it declines to purchase. The power conferred by Senate Bill No. 26 is not restricted to any locality and it applies to every mortgage on which there is past due interest.

(2) It is next contended that said Senate Bill No. 26 authorizes, or provides for, the diversion of interest or income on funds derived from Federal land grants in violation of §§ 154 and 159 of the State Constitution and authorizes or provides for a donation to or for aid of individuals in violation of section 185 of the Constitution. The members of the court are all agreed that it is beyond legislative power to divert, or to authorize the diversion, of any part of the principal, interest or income from the investment of any of the funds under

the control of the Board of University and School Lands resulting from the Federal land grants; and that any such diversion for, or to, any objects or purposes other than those for which the grants were made, or any donation of any part of such funds for the benefit or aid of any individual, corporation or association, either by the legislature directly or by the Board of University and School Lands by legislative direction, is inhibited by §§ 154 and 159 of the State Constitution. But the members of the court are not agreed as to whether Senate Bill No. 26 authorizes or provides for a diversion of interest or income, or authorizes or provides for a donation to, or for the aid of, individuals in contravention of §§ 154, 159 and 185 of the State Constitution. Mr. Chief Justice Burke and Judges Burr and Miller are of the opinion that said Senate Bill No. 26 does so authorize and provide and consequently that it contravenes §§ 154, 157 and 185 of the State Constitution; Judges Berry and Christianson do not share this view. They are of the opinion that it cannot be said that Senate Bill No. 26 authorizes or provides for a diversion of interest or income or a donation for the benefit or aid of any individual. They are of the opinion that when that statute is construed in the light of applicable rules of construction, and of constitutional and statutory provisions delineating the powers and duties of the Board of University and School Lands, and in the light of the history of the times and the legislation and the prevailing conditions with which the lawmakers sought to deal, it cannot be said that the statute confers upon the Board of University and School Lands authority to divert any part of the interest or income resulting from the investment of the funds under their control to any object or purpose other than those for which the funds were granted, or authority to make any donation thereof to or in aid of any individual, corporation or association.

The members of the court are all agreed that the decision falls within · and is controlled by § 89 of the State Constitution, as amended, which provides "that in no case shall any legislative enactment or law of the state of North Dakota be declared unconstitutional unless at least four of the judges of the supreme court shall so decide;" and that, consequently, it is the duty of this court to hold that the statute does not contravene any of the provisions of the State Constitution

*invoked by the plaintiff.* Daly v. Beery, 45 N. D. 287, 178 N. W. 104; Wilson v. Fargo, 48 N. D. 447, 186 N. W. 263.

Inasmuch as their views result in sustaining the constitutionality of the statute and making it effective as a law, Judges Berry and Christianson deem it proper to set forth the reasons why they believe it to be the duty of the court to hold the statute to be constitutional. What is said hereafter, therefore, represents the views of Judges Berry and Christianson only, and does not represent the views of Mr. Chief Justice Burke or Judges Burr and Miller.

Plaintiff's contention, that Senate Bill No. 26 authorizes, or provides for, a diversion of interest income on trust funds, resulting from Federal land grants, in violation of §§ 154 and 159 of the State Constitution, and/or authorizes, or provides for, a donation of such funds to or for the aid of individuals in contravention of § 185 of the Constitution, is predicated upon the proposition that it was the legislative intention by Senate Bill No. 26 to take interest on real estate mortgages, land contracts and rentals, which otherwise would be collected and become a part of the fund under the control of said Board, and in effect utilize such interest income for the relief of distressed debtors instead of for the purposes for which such income is required to be utilized by §§ 154 and 159 of the State Constitution.

It is too clear for controversy that it is wholly beyond legislative power to divert or utilize any part of the interest or income from the funds arising out of the Federal land grants under the control of the Board of University and School Lands to or for any purposes other than those specified in the Constitution itself. The language of §§ 154 and 159 upon this point is so clear and emphatic that to attribute any such intention to the members of the legislative assembly is tantamount to saying that they deliberately violated the plain mandate of the Constitution. It is presumed they had no such intention and that Senate Bill No. 26 was intended to facilitate and carry out the purposes authorized or directed by the Constitution and not to frustrate or defeat them.

It is true Senate Bill No. 26 does refer to the economic depression and the plight of farmers indebted to the Board of University and School Lands on real estate mortgages. This recital was doubtless intended as a statement of facts requiring the legislature to grant power

to the Board of University and School Lands to remit past due interest in whole or in part in certain cases; but this recital forms no part of the rule of conduct or action prescribed by the statute. It constitutes merely an explanatory statement, such as is frequently embodied in a preamble. Such statement is not a part of the rule of action and does not affect the validity of the statute. "An act cannot be declared unconstitutional for matter contained in the preamble, the text of the statute itself being free from constitutional objection. When the legislature passes an act within its powers, a statement of its reasons in the preamble will not affect the validity of the act." 2 Lewis's Sutherland Stat. Constr. p. 654. "A law is a rule of action, but an argument by way of preamble is not." State ex rel. Berry v. Superior Ct. 92 Wash. 16, 159 P. 92.

In Senate Bill No. 26, supra, the lawmakers refer to the economic depression, the decreased value of farm lands and the "many serious set-backs" suffered by "the farming industry in the state of North Dakota in the past few years" which it is said has rendered it "impossible for many of our best farmers to make payment upon the lands purchased from the Board of University and School Lands of this state or to pay interest upon the loans borrowed from such board." After these preliminary recitals the lawmakers said: "It is hereby provided that from and after the passage and approval of this act the Board of University and School Lands shall be authorized, through its proper officials, to reduce, scale down or throw off the interest that may be due upon any land contract or real estate mortgage, or rentals." This is the rule of action prescribed by the statute. Following the statement of this rule of action the lawmakers said that this is "to the end that justice may be done in dealing with our farmers and to enable the farmers indebted to the Board of University and School Lands to pay their debts and retain their property." This latter statement is also in the nature of an explanation of some of the beneficent results that it is hoped or expected will or may follow from a proper and conscientious discharge by the Board of University and School Lands of the power which the statute confers.

The statute clearly is not susceptible of the interpretation that the legislature intended that the Board of University and School Lands shall reduce, scale down, or throw off interest in any one case or in all

cases. It merely confers power upon the Board so to do. In short, it vests the Board with discretion. If the legislative assembly had intended that all past due interest payments should be cancelled or remitted or that there should be an indiscriminate reduction or scaling down in all cases it would doubtless have so provided or specifically directed the Board so to do. But, as said, the legislature did not do this. It did not give a command; it merely granted power to the Board to reduce, scale down or throw off interest in cases where the Board found this to be the necessary and proper thing to do.

The contentions of the plaintiff that the statute authorizes or provides for a diversion or donation is predicated upon the proposition that interest payments that otherwise would be made will be taken away from the fund under the control of the Board of University and School Lands. This assumption is, in our opinion, not in accord with the theory of the statute or the basic reasons which brought about its enactment.

It is a matter of common knowledge that during the recent financial depression the value of farm lands depreciated greatly, and that in a large number of instances interest on farm mortgages defaulted resulting in foreclosures which in turn resulted in farmers losing their farms and mortgagees obtaining title to lands which had a market value less than the amount of the mortgage that had been foreclosed. The financial depression, depreciated land values and inability of farmers to pay their mortgage indebtedness were conditions and not theories. These conditions confronted all individuals, concerns and agencies having investments in farm mortgages, and it has been recognized on every hand that the interest of the lenders, as well as of the borrowers, in many instances required that compromises be made; and that in many cases the mortgagees, for their own good and in order to protect their own interests, must make some reduction of their claims and especially of the interest charges. This acute situation has been recognized not only by private investors but by all three departments of government, both of the state and the nation. Congress created new financing facilities and agencies for the sole purpose of aiding farmers who were unable to pay outstanding mortgages against their farms. These Federal financing agencies took cognizance of the fact that it would be necessary, in many instances, for holders of mortgages on

farm property to reduce or scale down the accrued and unpaid interest in order to enable the farmers to refinance their indebtedness through the Federal Land Bank and the Land Bank Commissioner. Persons charged with the investment of trust funds, such as directors of savings banks and life insurance companies, have recognized that the proper safeguarding of such funds and the best interest of the beneficiaries justified or required that interest on, and at times part of the principal of, real estate mortgages be reduced. It has not been claimed that such reduction, honestly made for the purpose of safeguarding the funds, constituted a dissipation or a diversion of the funds or a violation of the duties of the trust.

It is a matter of common knowledge that the Industrial Commission of North Dakota and the Manager of the Bank of North Dakota took cognizance of the existing conditions and authorized the scaling down of interest on, and, in some instances of even part of the principal of, the mortgages executed to the Bank of North Dakota under the provisions of chapter 154, Laws 1919, and the acts supplementary to and amendatory thereof. Of course the Industrial Commission and the Manager of the Bank of North Dakota were wholly without authority to divert or dissipate such funds or utilize the interest payments for the relief of distressed farmers and there is no claim that they did so divert the funds or utilize interest income. On the contrary, it is recognized that they made the reduction because by so doing they safeguarded the funds and obtained larger payments than they probably would have obtained by standing upon the terms of and enforcing the contract.

In 1934 the Board of University and School Lands also took cognizance of the existing conditions, and in common with other creditors, and in conformity with the plan for refinancing provided by the Federal Land Bank, the Board arranged with a mortgagor to scale down or throw off interest so as to enable a mortgagor to make payment. At that time there was no statute authorizing the Board of University and School Lands to scale down or throw off any part of the interest on a mortgage on farm land held by the Board, and the question arose whether the Board had the power in any case to accept less than the full amount of the interest due according to the terms of the mortgage. It was freely conceded that in that particular case the arrangement which the Board of University and School Lands had entered into

would be for the best interest of the fund. The sole question was one of power, that is, whether the Board of University and Schools Lands had the power to reduce or scale down the interest in any case even though this became necessary in order to safeguard the fund. When that question reached this court the members thereof disagreed as to whether such power existed. Two members of the Court were of the opinion that the Board of University and School Lands possessed such power by virtue of the Constitution and that legislative authority was not required. The majority of the court, however, were of the view that the Board did not possess such power in the absence of legislation specifically conferring it. State ex rel. Board of University & School Lands v. Hanson, ante, 1, 256 N. W. 201.

The decision of this court in that case, as rendered by the majority members, was predicated solely upon the proposition (1) that § 156 of the State Constitution which confers upon the Board of University and School Lands power to "direct the investment" of the permanent school fund was not self executing; and (2) that the legislative assembly had not conferred authority upon the Board of University and School Lands to compromise any indebtedness secured by a real estate mortgage, or authority to accept less than the full amount of accrued interest according to the terms of the mortgage, and that consequently the Board of University and School Lands was without authority in any case to remit any part of the interest, or to accept payment of less than the full amount of interest due.

Senate Bill No. 26 was enacted by the legislative assembly for the purpose of conferring upon the Board of University and School Lands the power which this court in State ex rel. Board of University & School Lands v. Hanson, ante, 1, 256 N. W. 201, held that such Board did not possess in absence of express legislative authorization.

The basic powers and duties of the Board of University and School Lands are embedded in the Constitution. The Constitution provides that subject to the provisions of the Constitution "and any law that may be passed by the legislative assembly, said Board shall have control of the appraisement, sale, rental and disposal of all school and university lands, and shall direct investment of the funds arising therefrom in the hands of the state treasurer." North Dakota Constitution, § 156. This constitutional provision grants to the Board of University

and School Lands "general and full powers" in the sale, rental and disposal of school lands and the investment of funds arising therefrom, except as otherwise limited by law. Fuller v. Board of University & School Lands, 21 N. D. 212, 129 N. W. 1029.

"Law is the rule of reason applied to existing conditions." Milwaukee v. Milwaukee Electric R. & Light Co. 173 Wis. 400, 406, 180 N. W. 339, 181 N. W. 821, 13 A.L.R. 802.

During the past few years experience has demonstrated that in thousands of cases funds invested in real estate mortgages could be safeguarded and protected only by the mortgagees reducing, scaling down or throwing off in whole or in part accrued interest charges, and that at times the best interest of the mortgagees would be subserved by throwing off not only all accumulated interest but part of the principal as well.

It having been determined (State ex rel. Board of University & School Lands v. Hanson, ante, 1, 256 N. W. 201) that in the absence of legislative authorization the Board of University and School Lands was powerless to reduce, scale down or throw off interest in any case (even where the failure to do so would jeopardize the principal of the investment) the legislature determined that such power ought to be given, and by Senate Bill No. 26 conferred upon the Board general power to reduce, scale down or throw off interest. "With this grant of general power is expressly and impliedly conferred the duty of using judgment and discretion in such matters commensurate with the trust reposed in" the Board. Fuller v. Board of University & School Lands, 21 N. D. 212, 129 N. W. 1029. It must be presumed that the legislative assembly intended that the power thus conferred upon the Board should be exercised only in furtherance of, and in harmony with, the constitutional powers and duties of the Board and not otherwise. And this presumption must prevail unless the language employed by the legislature evidences a contrary intention beyond a reasonable doubt. It must be presumed that the statute was enacted to enable the Board of University and School Lands better to perform its duties. The primary duties of the Board remain unchanged. The Board of University and School Lands has no power to utilize the funds or interest income for any purposes except those specified in the Constitution. Its great and primary duty is to safeguard the fund and properly direct

the investment thereof, and if a case arises where the proper safeguarding of the fund requires that past due interest on a real estate mortgage be remitted in whole or in part the Board may do so. In short, in no case may the Board divert or donate any part of the interest income from the trust funds under its control; but it may reduce, scale down or throw off past due interest on a real estate mortgage investment of such funds where in its judgment that is necessary to protect the investment or the best interests of the trust fund will be subserved thereby. Whether such interest should be reduced or scaled down is a matter which the Board must determine in each case. This does not mean that the Board must conduct a formal hearing or make any particular form of investigation or enter an order of its findings in each case; but it does mean that the Board must consider each case by itself, and upon its merits determine whether the facts justify or require that the accumulated interest be reduced, scaled down or thrown off. "The amount of investigation and the quality and sources of information" are left for the Board's determination in each case. Fuller v. Board of University & School Lands, supra. The Board's decision as to whether the facts in any case warrant a reduction or throwing off of past due interest is, of course, final, and in the absence of fraud such decision is not subject to judicial review.

It follows, therefore, that it must be, and is, the judgment of the court that Senate Bill No. 26, Laws of 1935, is not vulnerable to any of the attacks made against it in this action; and that consequently the trial court was correct in sustaining the demurrer. The order appealed from is affirmed.

BURKE, Ch. J., and BURR, J., and BERRY and MILLER, Dist. JJ., concur.

NUESSLE and MORRIS, JJ., deeming themselves disqualified, did not participate, Hon. H. L. BERRY and Hon. HARVEY J. MILLER, Judges of Sixth Judicial District, sitting in their stead.