[File No. 6863]

STATE OF NORTH DAKOTA, as Owner and Trustee of the Permanent School Fund, Appellant, v. SHERIDAN COUNTY, a Quasi-municipal Corporation, and One of the Political Subdivisions of the State of North Dakota, Respondent.

(6 NW(2d) 51.)

Opinion filed October 27, 1942.   Rehearing denied November 9, 1942.

*Alvin C. Strutz,* Attorney General, and *C. E. Brace,* Assistant Attorney General, for appellant.

*George Thom, Jr.,* State's Attorney, for respondent.

CHRISTIANSON, J. The plaintiff brought this action to quiet title to certain lands in Sheridan county in this state. In its complaint, the plaintiff alleges that it is the owner of the land and that the defendant claims an estate in or lien upon the premises by virtue of a tax deed, and that such tax deed has been rendered inoperative and vests no right or interest in the defendant.

The material and undisputed facts are:—On March 11, 1925, the plaintiff, through its Board of University and School Lands, and

other duly constituted officers, loaned to one Augustadt $800 of the permanent school fund of the state; that to secure payment of such loan the said Augustadt, as mortgagor, mortgaged the land in question to the plaintiff, and as a result the plaintiff acquired a valid first mortgage lien upon the said premises. Thereafter default occurred in the terms of said mortgage in that the mortgagor failed to pay interest on and principal of the loan, and taxes upon the premises, and that thereupon the plaintiff, by virtue of said default declared the loan due, and intended to foreclose its mortgage; that instead of making foreclosure the plaintiff, on February 24, 1941, took from the mortgagor a quitclaim deed for said premises, pursuant to the provisions of chapter 254, Laws of 1935.

The taxes against said lands for the year 1931 having become delinquent, said lands were offered for sale, and bid in by the defendant county, at the tax sale held, December 13, 1932. No redemption was made, and pursuant to proceedings duly had a tax deed was issued to the defendant county on March 2, 1940.

It was, and is, the contention of the plaintiff that, under the provisions of chapter 254, Laws of 1935, the deed that was executed and delivered to the plaintiff by the mortgagor, Augustadt, operated to abrogate and terminate any and all rights and interest of the defendant by virtue of the tax deed.

The trial court rendered judgment that the tax deed still remains in force and effect, and that by virtue thereof, the defendant county is the owner of the land, that the plaintiff's mortgage is a valid first lien on the land, and that the title of the county under the tax deed is subject to the lien of such mortgage. The plaintiff has appealed from such judgment and demands a new trial in this court.

The plaintiff predicates its right of action solely upon the following provision of chapter 254, Laws of 1935: "In all cases where a mortgage held by the State of North Dakota as security for investment of the permanent school funds of this state is in default and foreclosure thereof is deemed advisable, the Board of University and School Lands may, at its discretion, accept from the record title owner of the land covered by that mortgage a deed of conveyance to the State of North Dakota of said mortgaged land, and said deed of conveyance shall ex-

tinguish all title, interest, and right of redemption of the grantor of said deed, but shall not extinguish the mortgage lien thereon. The mortgage lien may subsequently be foreclosed in the manner provided by law therefor. The deed of conveyance so taken may be recorded in the office of the register of deeds of the county wherein the land is situated, and the mortgage held by the state may be released and satisfied by an instrument executed by the President of the Board of University and School Lands and attested by its secretary, and written notice of such release and satisfaction shall be given by the secretary of the board to the State Treasurer, and that deed of conveyance shall have from the date of its execution the same legal effect for all purposes that a sheriff's deed would have had the mortgage involved been foreclosed."

The legislative assembly which enacted this statute was confronted with grave conditions resulting from drought and the economic depression. The value of farm lands had been greatly depreciated, and in a large number of instances farm mortgages were in default. These conditions confronted all individuals, concerns, and agencies, public and private, having investments in farm mortgages.

The situation was recognized by all three departments of both the state and national governments. Congress created new financing facilities and agencies for the sole purpose of aiding farmers who were unable to pay mortgages against their farms. These financnig agencies took cognizance of the fact that it would be necessary for holders of mortgages on farm property to reduce or scale down the accrued and unpaid interest in order to enable the farmers to refinance their indebtedness through the Federal Land Bank and the Land Bank Commissioner.

The Industrial Commission of North Dakota and the manager of the Bank of North Dakota took cognizance of the existing conditions and authorized a scaling down of interest on, and in some instances of even a part of the principal of, the real estate mortgages executed to the Bank of North Dakota under the provisions of chapters 147 and 154, Laws 1919, and the acts supplementary to and amendatory thereof. The Board of University and School Lands also took cognizance of the

existing conditions. A large number of the real estate mortgages, in which the trust funds under its control had been invested, were in default, and it was apparent that in many cases the debtors could not pay the principal and interest of their indebtedness, and the Board of University and School Lands sought to authorize the scaling down of interest on its defaulted mortgages, where that appeared to be to the best interest of the state, in order to enable a mortgagor to avail himself of the refinancing provided by the Federal Land Bank and the Land Bank Commissioner (State ex rel. Sathre v. Board of University & School Lands, 65 ND 687, 702, 262 NW 60); but this court held that the Board of University and School Lands was without power to authorize a reduction of any part of the past due interest. State ex rel. Board of University & School Lands v. Hanson, 65 ND 1, 256 NW 201.

This was the condition that confronted the Legislative Assembly when it convened in January, 1935, and the proceedings of that Assembly bear ample evidence that the lawmakers sought to deal with the problems before them. They enacted a statute providing for relief in cases of the foreclosure of mortgages, execution sales of real property, cancelation of contracts for the sale of real property, and eviction of tenants, for the postponement of certain sales and the extension of the period of redemption. Laws 1935, chapter 242.

The lawmakers knew that under the rule announced in State ex rel. Board of University & School Lands v. Hanson, supra, the Board of University and School Lands had no authority to enter into any compromise agreement with the mortgagor or the owner of the lands, however advantageous such compromise might be to the state, unless such authority was specifically conferred by statute.

The defaulted mortgages held by the Board of University and School Lands naturally divided themselves into three classes: (1) where the mortgagor was able to pay the debt, or the security was adequate, so that the full amount due on a mortgage might be collected; (2) where the mortgagor or the owner of the land was unable to pay and where the land was inadequate security, but where if all or part of the interest were remitted, the mortgagor or the then owner would be able

to pay at least the principal of the mortgage indebtedness; and (3) where the mortgagor or the then owner was unable to pay the mortgage debt, and where the best interest of the state required that the mortgage be foreclosed. As to the first class of mortgages, no additional legislation was necessary. As to the second class of mortgages, the lawmakers enacted a statute which specifically authorized the Board of University and School Lands "to reduce, scale down, or throw off the interest" that might be due on the land contracts or real estate mortgages, to the end that farmers indebted on contracts or mortgages might be able to pay their debts and retain their property. Laws 1935, chapter 255. As to the third class of mortgages, the lawmakers enacted chapter 254, Laws 1935, the statute involved in this controversy.

The question presented for determination here is the effect of a deed of conveyance taken by the Board of University and School Lands upon the interests or estate of a county under a prior tax deed. "Did the legislature intend that a deed, taken by the Board of University and School Lands under said chapter 254, supra, should operate to cut off and terminate the interests or estate of a county under a tax deed executed to the county prior to the deed taken by the Board of University and School Lands?" That is the question.

The appellant contends that upon the execution and delivery to the Board of University and School Lands of such deed all interests and estate of the county by virtue of the tax deed ceased to exist, and were wholly abrogated and terminated. This contention is predicated largely, if not wholly, upon the last clause of the above quoted § 1 of said chapter 254, namely, that the deed of conveyance to the state of North Dakota from the owner of the land "shall have from the date of its execution the same legal effect for all purposes that a sheriff's deed would have had the mortgage involved been foreclosed."

The clause upon which appellant places special reliance is merely a part of the statute. The intention of the lawmakers must be deduced from a view of the whole statute, and of every part thereof taken and compared together. Schneider v. Marquart, 45 ND 390, 395, 178 NW 195, 196; 25 RCL pp. 1004 et seq.; 59 CJ pp. 995 et seq. The concluding clause of the section must be read, and its meaning and effect ascertained, in light of the other provisions of the section,—that

"said deed of conveyance shall extinguish all title, interest, and right of redemption of the grantor of said deed, but shall not extinguish the mortgage lien thereon. The mortgage lien may subsequently be foreclosed in the manner provided by law therefor."

It will be noted that a deed taken by the Board of University and School Lands does not extinguish the mortgage lien. The mortgages to which said chapter 254 was intended to apply are first mortgages on farm lands in this state (ND Const. § 162), and hence the foreclosure of any such mortgage would obviously operate to vest in the grantee in the sheriff's deed, executed pursuant to foreclosure, a fee simple title, free and clear of all liens.

If it had been the purpose and intent of the lawmakers that a deed taken under the provisions of said chapter 254 should have the "same force and effect as if it had been executed pursuant to a sale under a foreclosure of the mortgage by an action in which all persons having an interest in or lien upon the property subsequent to the mortgage were made parties and duly served with process," there would have been no occasion for preserving the lien of the mortgage, and providing that such lien "may subsequently be foreclosed in the manner provided by law therefor."

The statute does not say that the deed to the Board of University and School Lands shall extinguish the title, interest or right of anybody except of the grantor in the deed; and it expressly recognizes that the title, interests, and rights of others than the grantor are not extinguished, and that notwithstanding the deed vesting fee title in the State it may be necessary to foreclose the mortgage in the manner provided by law for the foreclosure of mortgages as against the title, interests and rights of persons other than the grantor in the deed.

The statute, construed as a whole, clearly evidences a legislative intention that a deed taken pursuant to its provisions shall affect only the title, interest, and rights of the grantor in the deed, and does not affect any rights, estates, or liens subsequent or inferior to the mortgage held by the state. The object of the statute was to confer authority upon the Board of University and School Lands in any case where a mortgage is in default and foreclosure thereof is deemed advisable to accept from the owner of the land a deed of conveyance of the mort-

gaged land in lieu of foreclosure. The statute does not give to the deed of conveyance from the owner of the land the effect of a sheriff's deed, except as to the grantor. As to him the deed of conveyance operates to "extinguish all title, interest and right of redemption," and it has the same legal effect as if it had been executed pursuant to a sale under a foreclosure of the mortgage by action in which the grantor was a party and duly served with process. But as to other persons the deed has no more effect than a deed would have that was executed pursuant to a sale under a foreclosure by action in which they were not made parties.

Whether in any given case it is desirable and for the best interests of the state to take a deed is a matter for the Board of University and School Lands to determine. If a situation is presented where because of outstanding liens or encumbrances it is undesirable to take a deed, or where for any reason it seems more desirable to proceed with a foreclosure in a manner prescribed by law, the Board may of course pursue that course regardless of whether the then owner of the land may offer to execute and deliver a deed.

According to the decision of this court in State v. Divide County, 68 ND 708, 283 NW 184, the mortgage held by the Board of University and School Lands was a lien prior to all general taxes, and any lien or estate that might result from or be based upon such taxes. Nevertheless, the land was subject to taxation, and it was the duty of the county officers to cause taxes to be assessed against such land. the same as against other property subject to taxation. If the taxes were not paid, and became delinquent, it became the duty of such officers to cause the land to be sold at tax sale, and if there were no bidders to bid the same in for, and in the name of, the county. The county had the right to sell and assign the certificate of sale, and if no redemption were made the county had the right to have issued to it a tax deed, after proceedings had as prescribed by law. State v. Divide County, supra.

The interests and the estate of the county under the tax deed were not cut off by the deed to the state taken by the Board of University and School Lands. That deed did not in any manner affect the right and interest of the county under the tax deed. The tax deed, how-

ever, is subject to the lien of plaintiff's mortgage. Plaintiff may foreclose such mortgage. But the county may pay the mortgage, or in case of foreclosure, it may make redemption. The county may also sell the land in the manner prescribed by law, and the purchaser will have the right to pay off the mortgage, or in the case of a foreclosure, to make redemption.

The judgment of the district court is correct. It must be, and it is, affirmed.

BURR, Ch. J., and NUESSLE, MORRIS, and BURKE, JJ., concur.