John M. FLECK and Elizabeth Fleck, Plaintiffs and Respondents,

v.

STATE of North Dakota and John O. Lyngstad, Commissioner of the Board of University and School Lands, Defendants and Appellants.

No. 7473.

Supreme Court of North Dakota.

July 26, 1955.

Rehearing Denied Aug. 26, 1955.

Paul Benson,. Atty. Gen., C. E. Brace, Asst. Atty. Gen., for appellants.

J. K. Murray, Bismarck, for respondents.

GRIMSON, Judge.

This is an action to determine adverse claims to real estate. The. issue involved is the ownership of. one-half of the oil, natural gas and minerals in Section 24, Township 145, Range 95.

On March 19, 1938, the plaintiffs; John M. Fleck; and his wife, Elizabeth, made a loan of $4,400 from the permanent school fund of the State of North Dakota, due Dec. 1, 1949. To secure the loan they gave a real estate mortgage on Section 24, Township 145, Range 95. Defendants defaulted in the payment of interest. On October 28, 1941, the plaintiff mailed to the defendant by registered mail, a notice of intention to foreclose, showing $842 in past due interest. Plaintiffs acknowledged receipt thereof by a written receipt signed by John Fleck. A notice of real estate mortgage foreclosure sale of said land, dated Nov. 29, 1941, was thereupon published in six successive issues of the Killdeer Herald, next preceding the date of sale. Such sale was had and sheriff's certificate issued Jan. 13, 1942.

The plaintiff, John M. Fleck, testified that he could not read nor write except his name but that his wife noticed this foreclosure sale. He then testified that he went to a banker at Dickinson, North Dakota to see if he could make arrangements for a loan to redeem the premises. He claims such banker agreed to make him a loan and told him to draw his check on the bank for what he needed to pay and return to give the bank a mortgage therefor. The plaintiff, John M. Fleck, testified further that after making that arrangement he went to Bismarck and had a conference with some one in the office of the State Land Commissioner. By description he identified that man as N. B. Jensen, deputy state land commissioner. The date of that visit is not certain but John M. Fleck claims it to have been about two weeks after the foreclosure sale. He further claims that upon telling Jensen the arrangements he could make Jensen told him that he did not need to borrow money at 7 percent interest when the state would let him redeem at any time within three

years at 4 percent interest. John M. Fleck claims that thereupon, and in reliance thereon he abandoned making any deal with the bank. He claims he then gave the state land department a check for $369.72 to apply on the redemption. There was then about eleven months left within which redemption could have been made. Sheriff's deed was issued to the state on Jan. 13, 1943. On April 3, 1943, the state leased the four quarters in question to the plaintiff, John M. Fleck, and he paid the treasurer of Dunn County, $291.50 rental for 1943.

On July 6, 1943, the plaintiff, John M. Fleck, signed an application to purchase this land under Section 15–0715(5), NDRC 1943, for the minimum price of $5,149.82, the amount then due on his loan. On the same date the contract for such purchase was executed and signed by plaintiff, John M. Fleck. Payments under that contract were duly made by the said plaintiffs. On Sept. 25, 1944, the state executed a quitclaim deed to the premises to the plaintiff, John M. Fleck, reserving 50 percent of oil, natural gas and minerals in the state, as provided by Chapter 165, 1941 Session Laws. On the 12th day of December 1951, the plaintiff, John M. Fleck, through his attorneys, Strutz, Jansonius & Fleck, made application for a release of mineral reservations in the deed under Chapter 231, S.L. 1951. This application was denied when that law had been declared unconstitutional by the supreme court. Solberg v. State Treasurer, 78 N.D. 806, 53 N.W.2d 49.

On the 9th day of August 1952 this action was commenced. The case was tried to the court who found for the plaintiffs. Defendants appeal and assign almost every finding of fact and conclusion of law by the court as error. They ask for a trial de novo and their demand therefor is included in the settled statement of the case.

In this action plaintiff relies entirely on an oral contract extending the time of redemption and that he in accordance with said oral contract redeemed and recovered the whole interest in his land including all the mineral rights therein.

█ The proof of an oral contract for redemption after the legal period of redemption has expired must be clear and convincing. Kenmare Hard Coal, Brick & Tile Co. v. Riley, 20 N.D. 182, 126 N.W. 241.

We will first analyze the evidence to determine what, if any, factual and legal bases there are for plaintiffs' claims.

The plaintiff, John M. Fleck, in his testimony repeatedly makes bald statements that Jensen, the deputy land commissioner, gave him the right to redeem within three years and that on the strength of that he gave up trying to redeem within the year allowed by law. He claims to have made an arrangement with the Dickinson banker about the time of the sheriff's sale to furnish him money to redeem. He does not bring in the banker to corroborate him on that or explain his absence. He paid $291.50 for leases for the land in 1943 and received the original receipt. He admits signing the application for the purchase of his land and signing the contract for the purchase of the land on July 6, 1943. He admits signing a statement of the account of the purchase price of the land which statement shows he received a copy thereof. He admits he went to J. K. Eckes, state's attorney of Dunn County on August 30, 1943, within two months of the date of the contract, with his papers and was informed by him that he had a contract for the purchase of the land, not for redemption. At that time, at any rate, the evidence shows that plaintiff, John M. Fleck, knew what his papers contained. John M. Fleck made no complaints then to the state land department. He admits receiving the quitclaim deed of the state to himself dated Sept. 21, 1944. He made no complaint when he received that deed. But on Oct. 7, 1944, John M. Fleck went to the bank at Killdeer and had some one there write a letter for him to the state land department which he signed, requesting the return of the insurance policy which had been omitted by oversight when the deed was sent to him. All these papers he had in his files at home. He claims that he could not read and that he believed all the

papers he received from the land department pertained to redemption. His wife could read. John M. Fleck admits she told him the contents of the notice of intention to foreclose and that she read the receipts he received on payments. She is one of the plaintiffs and interested in this land. She did not testify nor is her absence explained. At any rate John M. Fleck did learn what those papers were soon after he got them if he did not know at the time he got them.

After some oil men had contacted him for oil leases he, in December 1951, consulted with attorney Al. C. Strutz who prepared for him an application for a release of 50 percent reservation of oil made by the state in the quitclaim deed as provided by Chapter 231, S.L.1951, Sec. 2. In that application, which John signed and verified, he stated that "The State of North Dakota *quitclaimed* to John M. Fleck, Killdeer, North Dakota, * * * all of Section 24, Township 155, Range 95. * * *" (Emphasis supplied.) He also executed a check to the state for $89 as the payment to accompany the application and signed a receipt for that when it was returned upon the denial of the application. All these actions on the part of the plaintiff, John M. Fleck, are inconsistent with his claim that he did not know what was in those papers and that he was redeeming the land rather than repurchasing it. After all these actions on his part he went to a new attorney and this action was commenced August 9, 1952.

Jensen is dead so there is no testimony as to what he said on this matter except John M. Fleck's testimony. Even that testimony is not very clear as to what Jensen promised him. When plaintiffs' Counsel asked John M. Fleck:

"What did Jensen say: A. Jensen said: 'Why should you pay seven (7) percent interest, you can have it here for four (4), and they will wait until you, just as long as you get ready for your land,' and I said, 'I am alone, the boys are in the army,' so he said, 'that makes no difference, they don't crowd you, that's all right,' he said, 'you can

pay, keep on paying right along and they will do it for you, wait for you.'

"Q. Who would wait for you? A. The State Land Department."

On cross examination the plaintiff, John M. Fleck, claims Jensen said:

"Why should you pay seven percent (7%) when you got it here cheaper and you get all the chance you want and then when the war is over, the boys come, you can pay down just the way you can and when the war is over and you should die then the, one of the boys can redeem it,' you know, so I thought that sounds good and it is all right. I trusted that man and I believed in him, you know."

On re-cross examination the plaintiff, John M. Fleck, testified:

"Q. Nobody ever told you about there was a law you could go in and repurchase your land, was there? Did anybody ever tell you? A. I don't know.

"Q. How was it you went in promptly after that law went into effect? A. Well they told me to come, they didn't know, when I was up to Jensen's office they said, he didn't know exactly how it is going to be, he said, 'you come back,' I think he said, 'in July,' and then he said, 'on a certain date in July', then he says, 'I can tell you all the facts.'"

These quotations from Jensen's conversations indicate that Jensen and the state land department were willing to cooperate with plaintiff in his attempt to retain his land. Taken as a whole, however, this testimony of what John M. Fleck claims Jensen told him is more indicative of a repurchase of the land than of redemption.

At all times when these conversations between Fleck and Jensen could have taken place there was in effect a law by which Fleck, after the period of redemption had expired, could repurchase the land on easier terms than he could borrow the money to

redeem. Chapter 252, S.L.1941. The last conversation quoted, indicates that Chapter 231, Laws of North Dakota 1943 (Now Sec. 15-0715(5) NDRC 1943) had been enacted but would not take effect until July 1, 1943. This law when it became effective, would give the plaintiff a preferential right to repurchase. At Jensen's request, plaintiff waited until the law became effective before entering into any transaction to reacquire title to the land.

In July, plaintiff entered into a contract to repurchase. This contract provided for payments on the purchase price which were extended far beyond a three year period from January 1942 which was the maximum time within which the plaintiff claimed he had a right to redeem.

Taking all of the evidence into consideration, it seems to us that the most reasonable inference to be drawn from the facts is that Jensen asked the plaintiff to wait until after July first so that he might take advantage of the new statute which would give plaintiff a right to repurchase but not to make a belated redemption, and that it was therefore repurchase and not redemption that Jensen was talking about in his 1943 conversations with the plaintiff.

■ It is contended on behalf of the plaintiffs that John Fleck's testimony as to an agreement for the extension of the time of redemption is undisputed and it must be given full credence. It is true that there is no oral testimony disputing his statements but the facts and circumstances heretofore shown may be considered by the court in determining the credibility of his testimony. In Ives v. Hanson, N.D., 66 N.W.2d 802, 803, we held:

"The weight and credibility of the testimony of an interested party, though uncontradicted, is for the triers of the facts, whether court or jury, who are not bound thereby."

In the case of Crilly v. Morris, 70 S.D. 584, 19 N.W.2d 836, 840, it was said:

"'The rule is well settled that where an unimpeached witness testifies distinctly and positively to a fact and is uncontradicted, but the statements of the witness are grossly improbable or he has an interest in the question at issue, Courts are not bound to blindly adopt the statements of such witness.'"

Many cases are cited in support of that principle. See also 32 C.J.S., Evidence, § 1038, p. 1089; 8 A.L.R. 796, Annotation.

■ The testimony of the plaintiff, John M. Fleck, is far from being clear and convincing. The evidence when interpreted according to the circumstances existing and reasonable inference therefrom fails to show any agreement to allow the plaintiffs to redeem after the statutory time for redemption had expired.

On the other hand the defendant shows a clear and undisputed record in the matter beginning with the mortgage, the default in payments, the foreclosure, the sheriff's deed, the leases to the plaintiff of the land for 1943, the application of the plaintiff to repurchase under Chapter 15-07, the contract executed by both parties for such purchase reserving 50 percent of the oil, gas and minerals and ending with the quitclaim deed issued upon payments in accordance with the contract. The evidence supports defendant's contentions.

The plaintiffs having failed to prove by satisfactory evidence that there was an agreement between the parties for extension of the time to redeem, the judgment of the district court is reversed and the case dismissed.

BURKE, C. J., and JOHNSON, SATHRE and MORRIS, JJ., concur.