Rose PATTERSON et al., Plaintiffs
and Respondents,

v.

The CITY OF BISMARCK et al., Defendants and Appellants.

Civ. No. 8715.

Supreme Court of North Dakota.

June 23, 1971.

Rausch & Chapman, Bismarck, for plaintiffs and respondents.

John A. Zuger, City Atty., City of Bismarck, and Arthur B. Whitney, Minneapolis, Minn., for defendants and appellants.

ADAM GEFREH, District Judge.

This appeal is from a judgment rendered in favor of the plaintiffs in an action in the District Court of Burleigh County to enjoin the collection of certain special assessments levied against the plaintiffs' property in the City of Bismarck. The defendants have requested a trial de novo in the Supreme Court. The project for which the assessments were levied is a parking facility to provide off-street parking facilities for the principal business district of Bismarck, which facility was constructed under the powers granted under Chapter 40–60 of the North Dakota Century Code.

The action to enjoin the collection of the special assessments alleged several grounds as the basis for declaring the special assessments against the properties of the plaintiffs invalid. However, the trial court at the outset of the trial indicated to the parties that it was concerned with the interpretation of Section 40–60–02 subsection 5 (f) of the North Dakota Century Code and inquired whether the parties would stipulate that the City of Bismarck issued bonds for the total amount of the cost of the parking facility and that the City of Bismarck leased out all of the parking facility. No reference was made in the stipulation as to the type of bonds that were issued. This stipulation was agreed to by the parties whereupon the court proceeded to a discussion of Section 40–60–02 subsection 5(f) of the North Dakota Century Code indicating to the parties that under this subsection the city, having leased the entire facility, is precluded from levying special assessments.

The defendants thereafter offered as exhibits in evidence all the official proceedings had by the city in connection with this parking facility which the court received. The plaintiffs did not introduce any evidence, but indicated to the court that they had testimony to offer in support of their allegations in the complaint, but would not offer any if the court was prepared to rule on the one issue that the court raised and on that basis rested. The parties thereupon rested and the court issued its decision.

The first issue before this court is whether or not the trial court's decision should be sustained.

The City of Bismarck determined to use the special assessment route as the primary source of financing a combined parking and commercial facility with the provision that the special assessments would be reduced to the extent that rentals would be derived from both the parking and commercial facilities. The plaintiffs in their complaint have challenged this combination method of construction and financing on several grounds, but the trial court did not rule on any of those issues raised. The court, after the parties had stipulated that the City of Bismarck had leased out all of these facilities and had issued bonds for the total cost of construction, concluded

that Section 40–60–02 5(f) North Dakota Century Code, which provides that leases of the facilities must be adequate to pay for the principal and interest for all bonds becoming due during the terms of the leases, precludes a municipality from levying any special assessments.

The State Legislature in 1967 enacted Chapter 40–60 entitled "Promotion and Acquisition of Municipal Parking Facilities." The purpose of this legislation is clearly stated in Section 40–60–01 North Dakota Century Code, which reads in part:

"* * * The withdrawal of a disproportionate amount of land for this purpose from use for commercial development and from the tax base of municipalities is undesirable and can be avoided, when the growth of business areas makes it economically feasible, by the construction of multi-level parking ramps and garages, and by making the space above, below or adjacent thereto available for commercial development and use."

Section 40–60–02 North Dakota Century Code grants the power to municipalities to implement the legislative policy declared in Section 40–60–01, and reads as follows:

"1. To acquire, construct, improve, develop and extend parking facilities.

"2. To provide funds for this purpose by the budgeting of current funds, the levy of taxes or special assessments, or the issuance of bonds or other obligations, or by any combination of these means, pursuant to and in accordance with the provisions of the North Dakota Century Code, chapters 21–03, 40–22 to 40–27, 40–35, 40–40, 40–41 and 40–57, and of all other applicable laws now in force or hereafter enacted.

"3. To devote to this purpose any land, buildings, structures or equipment which may be owned by the municipality, and are determined by its governing body to be useful therefor and not required for another municipal purpose, and whose use for this purpose is not restricted by the terms of any conveyance or judgment by which such properties were acquired.

"4. To operate and maintain parking facilities and establish and collect rates, charges and rentals for the use thereof by all public and private persons, firms and corporations.

"5. To lease parking facilities, and any part thereof, to any public or private person, firm or corporation, upon such terms as the governing body may determine; provided that:

"a. No lease may be executed for a longer term, or shall be subject to extension at the option of the lessee for an additional term or terms, exceeding the maximum period prescribed by the North Dakota Century Code, section 47–16–02.

"b. Every lease shall provide that title to all real property, buildings, and improvements on real property or in buildings subject to the lease, whether or not previously owned or acquired, constructed or financed by the municipality, and title to all other real and personal property subject to the lease which was previously owned or is acquired, constructed or financed by the municipality, shall be and remain in the municipality.

"c. If the entire site of any parking facilities and all improvements constructed thereon are leased, the lease shall specify the amount of space to be operated and maintained exclusively for public parking of motor vehicles, and the area of such space shall be not less than two times the area of the space, if any, to be made available within the facilities for commercial use.

"d. Any lease may permit the sublease of part or all of the facilities, but the minimum parking space specified in accordance with subsection c

shall be used or subleased solely for public parking, and all other space in the facilities shall be used or subleased solely for commercial or industrial use furthering the policies and purposes declared in the North Dakota Century Code, chapter 40–57, and may be so used notwithstanding any provisions of that chapter precluding the use of previously owned municipal property or of municipally operated property for the projects therein authorized.

"e. If under the terms of the lease the lessee is to construct and finance part or all of the parking facilities to be provided at the leased site, the lease may permit the lessee's interest therein to be mortgaged to secure the repayment of money borrowed by the lessee for this purpose, upon reasonable terms approved by the governing body of the lessor, and may allow the mortgagee a reasonable time to cure any default in the payment of rentals and the performance of covenants under the lease, prior to the termination thereof by the lessor.

"f. Every lease or part or all of the facilities at a particular site shall provide for the payment by the lessee of all costs of the operation and maintenance of the leased property including, but without limitation, all taxes and special assessments validly levied on the premises or leasehold, adequate insurance against loss of or damage to the leased property and loss or damage to other persons or property from any and all operations conducted thereon, and for payment by the lessee of net annual rentals at least sufficient to pay all principal and interest becoming due during the lease term on any amount of bonds issued by the municipality to pay capital costs of the leased property, and at least sufficient to reimburse the muncipality for any other expenditure made by it to pay such capital costs, in annual amounts such that, if continued uniformly over the useful life of the facilities, the total amount of such investment would be repaid in full with interest at five percent per annum on the balance thereof from time to time remaining unpaid; and

"g. The leasehold created by any such lease is classified as personal property, and any such portion of such premises not used solely for public parking of motor vehicles shall be subject to taxation."

Prior to 1967 a municipality had authority to construct and operate parking facilities under Chapters 21–03 (general obligation bonds) 40–22 (special assessments), and 40–35 (revenue bonds) North Dakota Century Code. A municipality also had the power to construct industrial or commercial structures under Chapter 40–57 North Dakota Century Code. Chapter 40–60 for the first time granted power to a municipality to construct a combination parking and commercial structure and finance such structure by any of the methods that heretofore would have been available to finance a parking facility or commercial enterprise facility, or by using a combination of these financing methods.

The chapter is silent as to the procedure that a municipality must follow in the event it should choose to employ a combination method of financing. The City of Bismarck determined to proceed to construct a combined parking and commercial facility and arrange for the financing under Chapter 40–22 North Dakota Century Code which is the special assessment procedure, and as the record now stands apparently complied with all the legal requirements under that chapter up to the confirmation of the special assessments levied against the property within the special improvement district.

The resolution of necessity adopted by the City of Bismarck set forth the proposed method of assessment of the cost of the improvement and subsequent reduction of assessments by the amount of net reve-

nues derived from rentals from said facility. The resolution in part reads as follows:

"3. The cost of said improvement shall be specially assessed against the respective lots, tracts and parcels of land lying within said improvement district in amount proportionate to and not exceeding the benefits derived by them from the improvement, subject to annual reduction or cancellation of the installments of such assessments as provided below, in the event that sufficient net revenues are received from charges for the service of the improvement as provided below. The entire remainder of such cost, including interest as well as principal of any warrants issued, over and above the amount of special assessments actually collected and received from time to time in the fund of the improvement district, shall be paid from the net revenues derived from service charges for the use of the improvement.

"4. Said improvement shall be used, occupied, operated and maintained by the City, or by a lessee selected by the Board of City Commissioners, under a lease conforming to the provisions of said Chapter 40–60, and charges shall be established, imposed and collected for the services furnished by said improvement, and the net revenues derived from such charges, including all net rentals under any such lease, shall be paid into the fund of the improvement district and used and applied in the same manner as moneys received therein from the collection of special assessments.

"5. Pursuant to the provisions of Section 40–22–16 of the North Dakota Century Code an assessment reserve shall also be established in the fund of the improvement district, to which there shall be appropriated net revenues of said improvement from time to time received in excess of amounts required, with any special assessments then on hand, to meet the principal and interest next due on warrants issued to finance the improvement. Prior to November 1 in each year the Board shall by resolution determine the proportion of the principal and interest payable on the warrants in the following year which may be paid from the net revenues then on hand in the assessment reserve, and shall reduce by that amount the assessment installment and interest which would otherwise be placed upon the tax list for the current year against each lot and tract of land assessed."

■ This court in City of Fargo v. Annexation Review Commission, 148 N.W.2d 338, at page 352 (N.D.1967) stated:

" 'All statutes must be construed, if possible, so as to give them validity, force and effect, and carry out the will of the legislator. In doing this, respect must always be had to the language of the statute, the plain and obvious meaning of the words used and the relation which one enactment bears to another, as well as their objects and purposes.' People v. Sweetser, 1 Dak. 308 (295), 46 N.W. 452 [1876]."

Likewise, in Beck v. Workmen's Compensation Bureau, 141 N.W.2d 784, on page 787 (N.D.1966), we stated:

" 'The intention of the lawmakers must be deduced from a view of the whole statute, and of every part thereof taken and compared together. Schneider v. Marquart, 45 N.D. 390, 395, 178 N.W. 195, 196; 25 R.C.L. p. 1004 et seq.; 59 C.J. p. 995 et seq.' State v. Sheridan County, 72 N.D. 254, 6 N.W.2d 51, 54 [1942]."

The declared policy in enacting Chapter 40–60 was to facilitate the acquisition and operation of parking facilities in the business district of a municipality. The legislature apparently had recognized that financing such a facility had been the obstacle that had deterred municipalities, such as Bismarck, from constructing adequate downtown parking facilities. In order to

facilitate the financing of such facilities, Chapter 40–60 was enacted which granted the power to municipalities to utilize any method or combination of methods to finance the construction. Chapter 40–60 does not specify how this combination of methods may be accomplished. This is discretionary with the municipality.

Subsection 5 of 40–60–02 grants the power to lease and then under subdivisions (a) through (f) specifies the terms and conditions to which the leases must conform.

The parties at the suggestion of the trial court stipulated that the City of Bismarck issued "bonds" for the total cost of construction of the facility, and the trial court in its decision also refers to the word "bonds" without specifying or describing the type of bonds that were issued. The record clearly shows that the bonds issued are "Refunding Improvement Bonds" authorized under Chapter 40–27 North Dakota Century Code. The refunding bonds are issued in exchange for the special improvement warrants, and are not bonds payable from either general taxes or revenue from rentals or service charges, but from the fund created for the payment of the special improvement warrants.

The trial court without reference to any other sections of Chapter 40–60 construed subsection 5(f) of Section 40–60–02 North Dakota Century Code to mean that once a municipality has determined to lease a parking facility constructed under this chapter it is precluded from levying special assessments against any property on the apparent theory that the income from the rentals shall become the sole source of payment of the refunding bonds. Standing alone, subsection 5(f) of Section 40–60–02 might be given the construction that the trial court placed upon it. This subsection, however, is ambiguous. It is also open to the construction that this subsection only refers to the terms that a lease must contain in order to be a valid lease and in no way prohibits or restricts any levies or as-sessments against any properties that may be specially benefited by the facility.

■ We can not agree with the trial court's construction of subsection 5(f) of Section 40–60–02 North Dakota Century Code. We do not find any language in this section from which we could infer that a municipality would be prohibited from making special assessments simply because it has issued bonds for the total cost of construction and has leased out the entire facility. If we would accept this interpretation, then a municipality having determined to finance the facility through general obligation bonds would also be prohibited from levying any taxes against any property from which to pay general obligation bonds if it should at any time decide to lease the parking facility. Such an interpretation would practically nullify the purpose of the entire chapter.

In Chapter 40–35 and Chapter 40–57 North Dakota Century Code dealing with revenue bonds and municipal industrial revenue bonds we find language to the effect that such bonds are payable solely out of revenue derived from the rentals or service charges of the facility constructed. We do not find such language in Chapter 40–60 other than the reference that financing may be accomplished under Chapters 21–03, 40–22 to 40–27, 40–35, 40–40, 40–41 and 40–57 of the North Dakota Century Code. Had the City of Bismarck chosen to finance the parking facility under either Chapter 40–35 or 40–57 it would have been prohibited from making any levies for the payment of any of those bonds by the terms specifically stated in those chapters and not by virtue of any language found in subsection 5(f) of Section 40–60–02. The City of Bismarck did not issue bonds under either Chapter 40–35 or 40–57, but issued temporary special improvement warrants under Chapter 40–24 which were subsequently exchanged for definitive improvement warrants which in turn were refunded by special improvement bonds authorized under Chapter 40–27.

Reading all of the sections of Chapter 40–60 together as one unit, we conclude that subsection 5(f) does not pertain to the power of financing, but merely provides the formula under which leases for these facilities may be offered by the city, and therefore does not prohibit a municipality from levying taxes or assessing special assessments as a primary source of revenue for the payment of any warrants or bonds which a municipality may have issued in connection with the construction of such a facility. We, therefore, conclude that the trial court has erroneously interpreted subsection 5(f) of Section 40–60–02, and its decision must be reversed.

The appellants have asked for a trial de novo on all the issues. However, since the trial court's decision is based solely on the interpretation of subsection 5(f) of Section 40–60–02 North Dakota Century Code, and the court having indicated to the parties that it would only consider the evidence introduced as it relates to this one issue, it is quite apparent to this court from the record made that the plaintiffs chose not to offer any testimony in support of its other allegations in order not to prolong the trial. Where it appears from the record that material facts are absent from the record, a new trial may be granted by the Supreme Court under Section 28–27–32 North Dakota Century Code. TeSoro v. LaDue, 133 N.W.2d 566, (N.D. 1965). In order to accomplish justice in this case the court deems it necessary to grant a new trial.

For the reasons stated in this opinion, the judgment of the district court is reversed and the case remanded for a new trial on all the issues.

TEIGEN, KNUDSON, PAULSON and ERICKSTAD, JJ., concur.

STRUTZ, C. J., did not sit; Adam Gefrch, Judge of the Third Judicial District, sitting in his stead.