Ernest R. LANG, Plaintiff
and Appellant,

v.

BANK OF NORTH DAKOTA,
Defendant and Appellee.

Civ. No. 890241.

Supreme Court of North Dakota.

March 12, 1990.

Ernest R. Lang (argued), McKenzie, pro se.

Kent M. Morrow (argued), Asst. Atty. Gen., Bismarck, for defendant and appellee.

MESCHKE, Justice.

Ernest R. Lang appealed from a summary judgment rejecting his damage claim against the Bank of North Dakota for deprivation of statutory post-foreclosure opportunities. We reverse and remand for trial.

This is a sequel to *Lang v. Bank of North Dakota*, 423 N.W.2d 501 (N.D.1988) (*Lang II*), where we sketched the history of Lang's litigation with the Bank of North Dakota:

> The Bank of North Dakota foreclosed its mortgage on Lang's farm. Lang did not redeem and the foreclosure became final. *See Lang v. Bank of North Dakota*, 377 N.W.2d 575 (N.D.1985). [*Lang I*]. Proceeding without counsel, Lang sued the Bank of North Dakota for damages, arguing that the Bank of North Dakota wrongfully sold its sheriff's certificate of foreclosure sale of his farm to a second mortgagee, the Bank of Steele, before the time for redemption expired. The trial court dismissed the complaint under N.D.R.Civ.P. 12 for failure to state a

claim upon which relief could be granted. Lang appealed.

*Id.* at 502. We reversed. While Lang's complaint did not state a claim for damages for wrongful foreclosure, we ruled that Lang did state a claim for deprivation of a statutory privilege of repurchasing the farm before its public sale.

We said in *Lang II:*

The effect of the cited statutes on Lang's post-redemption opportunities has not yet been explored by either evidentiary development or legal analyses. Testing application of those statutes to Lang's circumstances would be precluded if we affirm a brusque dismissal of his complaint without judicial examination or exploration.

*Id.* at 503. On remand, the Bank of North Dakota moved for summary judgment without any supporting affidavit or evidence about the circumstances of the transfer of the sheriff's certificate to the Bank of Steele. Lang responded, alleging that "[t]here remain significant, material disputed facts that are necessary for a complete adjudication...." In his affidavit to the trial court, Lang stated:

That ... the attorney representing the Bank of North Dakota ... acknowledged that the procedure used by the Bank of North Dakota in this case was unusual, and [its attorney] could not cite any examples of where the Bank of North Dakota had ... [sold] a Sheriff's Certificate of Sale to a second mortgagee, to dispose of land in the inventory of the Board of University and School Lands....

\*        \*        \*        \*        \*        \*

That the action of the Bank of North Dakota in prematurely selling my property, without offering me and my family the right to repurchase the property deprived me of ... use of the land ... [and] of the opportunity for continued ownership of my farm....

That the Bank of North Dakota knew or should have known ... that by selling the Sheriffs's [sic] Certificate of Sale to the Bank of Steele, [it was] denying me and my family the opportunity to repurchase the land at private sale as provided by NDCC Chapter 15–07.

That the Bank of North Dakota knew or should have known, that my farm was valued at twice the amount bid in by the Bank of North Dakota at the Sheriff's sale, and twice the amount paid for by the Bank of Steele.

\*        \*        \*        \*        \*        \*

That my suit against the Bank of North Dakota is based on the failure of the institution to give me the rights to repurchase my land as guaranteed by statute....

Lang argued to the trial court that "[g]ranting a motion for summary judgment at this point leaves the Supreme Court with no better record ... than it had on the first appeal."

The trial court thought that the inquiry was "whether the Bank was precluded by Sections 15–07–04 [1] and 15–07–10 [2] from selling its certificate of sale," and concluded that those sections "are inapplicable in this case. They would come into play if a

---

**1.** NDCC 15–07–04 said:

*Private sale—Terms and prices.* Any land sold under the provisions of this chapter shall be by public sale except purchases under the provisions of sections 15–07–10 and 15–08–13. If the land was acquired through the cancellation of a contract for deed, the price shall be not less than the amount due at the time of cancellation. If the land was acquired through foreclosure, the price shall be not less than the amount due at the time of the foreclosure sale. In either case, the purchase price also must include interest on the aforesaid amount at the rate of five percent per annum from the date of the cancellation or the foreclosure sale, as the case may be, and

the amount of recording fees paid by the state.

This section has since been amended several times. S.L.1987, ch. 193, § 3; S.L.1987, ch. 194, § 2; and S.L.1989, ch. 192, § 2.

**2.** NDCC 15–07–10 said:

*Mortgagor has right to repurchase on crop share payment contract before sale of land—Notice to mortgagor.* If any mortgagor or his heirs shall desire to repurchase land lost through foreclosure or by a deed given in lieu of foreclosure, such repurchase may be made at any time before such lands are offered at public sale to the highest bidder.

This section has since been amended. S.L.1987, ch. 193, § 4.

deed had been issued to the Bank upon the expiration of the period of redemption from foreclosure. . . . The Bank of North Dakota did not acquire title so the provisions of Chapter 15–07 do not apply." Disregarding our direction and Lang's entreaties, the trial court granted judgment to the Bank of North Dakota and dismissed Lang's claim.

■ On appeal, Lang argued that "[t]he order for summary judgement [sic] [did] not fulfill the remand of the Supreme Court." We agree. The trial court's analysis was too simplistic and amounted to nothing more than a dismissal for failure to state a claim. We rejected that view by our reversal in *Lang II.* Statutes in existence at the time Lang contracted his farm mortgage with the Bank of North Dakota, acting for the board of university and school lands, became a part of that mortgage contract to the same extent as if they were expressly incorporated therein. *Megarry Bros. v. City of St. Thomas,* 66 N.W.2d 704, 710 (N.D.1954); *Voltin v. Voltin,* 179 N.W.2d 127, 134 (N.D.1970). *See also Harbal v. Federal Land Bank of St. Paul,* 449 N.W.2d 442 (Minn.App.1989) (Assignment of a sheriff's certificate of foreclosure sale prior to the running of the statutory period for redemption is tantamount to a sale of the property and may not be used to circumvent a statutory right of first refusal in the former mortgagor to repurchase.) Sale of the sheriff's certificate, even before foreclosure vested complete title in the Bank of North Dakota, prematurely impaired Lang's statutory opportunities.

■ The board of university and school lands has long been mandated to invest part of its permanent funds in first mortgages on farmland and rangeland within North Dakota. NDCC 15–03–04 [3] and 15–03–05.[4] An underlying purpose has been to help "actual residents of this state . . . who are actively engaged in the business of farming or ranching." NDCC 15–03–07.[5] Keeping farmers on their farms is a valid legislative goal. *See Lang I,* 377 N.W.2d 575; *State v. Sheridan County,* 72 N.D. 254, 6 N.W.2d 51 (1942). Thus, these farm mortgages are not simply commercial investments; they are also instruments of a legislative policy to support and underwrite the principal industry in this state—agriculture.

Comprehensive and detailed procedures are set out in the statutes controlling these mortgage investments, NDCC 15–03, regulating their handling and foreclosure,

**3.** NDCC 15–03–04 said:

*Investment of funds—Purchase of bonds and mortgages—Appraisal.* Subject to the provisions of section 15–03–05; the board of university and school lands shall invest the money belonging to the permanent funds under its control in the following securities:

1. First mortgages on farmlands and improvements thereon in this state to the extent such mortgages are guaranteed or insured by the United States or any instrumentality thereof, or if not so guaranteed or insured, not exceeding in amount eighty percent of the actual value of the property on which the same may be loaned, such value to be determined by competent appraisal.

2. All investments that are enumerated under section 21–10–07 as legal investments for the state investment board.

This section has since been amended to eliminate the specific reference to "First mortgages on farmlands and improvements thereon in this state." S.L.1987, ch. 141, § 29; S.L.1987, ch. 190, § 1; S.L.1989, ch. 190, § 1; and S.L.1989, ch. 191, § 1.

**4.** NDCC 15–03–05 said:

*One-third of permanent funds to be invested in farm loans—Exception.* At least one-third of the whole amount of the several permanent funds, as computed by the commissioner of university and school lands at the end of each fiscal year, shall be invested in first mortgages on farmlands and rangelands in this state if there is a sufficient demand for investment in farm loans. First mortgage loans on farmlands and rangelands shall be made only in accordance with the provisions of this chapter.

This section has since been amended to increase the mandated portion of permanent funds to be invested in first mortgages on farmlands and rangelands to one-half, instead of one-third. S.L.1985, ch. 199, § 1.

**5.** NDCC 15–03–07 says:

*Limitations on farm loans.* Farm loans secured by a first mortgage shall be made only upon farmland and rangeland in this state, and only to persons or other legal entities who are actual residents of this state and who are actively engaged in the business of farming or ranching.

NDCC 15–08, and directing the disposition of "nongrant lands" acquired through foreclosures, NDCC 15–07. The Bank of North Dakota has been statutorily delegated to act as agent for the board in handling these farm mortgage investments. NDCC 15–03–04.3.[6] But the board of university and school lands retains the responsibility "to promulgate policies, rules, and regulations for the purchase of first mortgage farm loans" and to "set such terms, conditions, interest rates, and other guidelines ... commensurate with its fiduciary responsibilities." NDCC 15–03–04.2. *See also* 15–07–02. If loans become delinquent, the Bank of North Dakota "shall handle foreclosures in accordance with standard banking practices...." NDCC 15–03–04.-1.[7] In doing so, the Bank of North Dakota must of course follow any applicable policies of the board and the statutory plan to benefit farmer-borrowers.

A farmer who borrows from the board has a panoply of protections. Several special provisions govern foreclosure, including redemption by "such mortgagor, his heirs or assigns." NDCC 15–08–13.[8] *See also* NDCC 15–03–12, 15–03–13, and 15–03–14. Thus, favored treatment for the farmer-borrower begins with the mortgage, continues throughout foreclosure proceedings, and extends thereafter until the land is put

**6.** NDCC 15–03–04.3 said:

*Loan pool account—Execution of instruments.* The Bank of North Dakota shall, in accordance with standard banking practices, execute all instruments on behalf of the board of university and school lands that pertain to real estate mortgages in the loan pool account, including satisfactions and partial releases. The Bank of North Dakota shall also act as agent for the board and shall execute all instruments, including satisfactions and partial releases, that pertain to mortgages previously issued by the board. All instruments shall be executed in the same manner as specified in section 6–09–26.1. This section is self-executing and no assignment, power of attorney, or other instrument of transfer is necessary to establish the authority of the Bank of North Dakota to act on behalf of the board of university and school lands under this section.

This section has since been amended, including addition of an opening proviso: "Subject to the provisions of this chapter...." S.L.1987, ch. 189, § 3.

**7.** NDCC 15–03–04.1 said:

*Loan pool account.* There is hereby created in the Bank of North Dakota a loan pool account. The board of university and school lands may purchase first mortgage farm loans made in accordance with this chapter from the Bank of North Dakota. All purchased farm loans shall be credited to the loan pool account and the investments, repayments, interest, and income shall be credited to the various land department trust funds in the proportion that each participates therein. The loan pool account shall consist of current loans whenever possible. In the event delinquent loans are kept in the loan pool account, the Bank of North Dakota shall handle foreclosures in accordance with standard banking practices and proceeds shall be properly credited to the loan pool account and income accounts. The Bank of North Dakota shall charge such fee for the management of each loan as the Bank of North Dakota and the board of university and school lands shall agree. Such fee may only be deducted from interest payments received on loans. Loans purchased by the board of university and school lands may have originated in the Bank of North Dakota or other financial institutions. The Bank of North Dakota shall certify that all loans purchased by the board of university and school lands are first mortgages and that there are no prior judgments, mortgages, liens, or other encumbrances against the security for such first mortgages.

This section has since been amended. S.L.1987, ch. 189, § 2.

**8.** NDCC 15–08–13 said:

*Redemption from cancellation of contracts or foreclosure of mortgages ....* When a mortgage held by the board has been foreclosed and a sheriff's deed issued to the state, such mortgagor, his heirs or assigns, during the period of one year from the date of such foreclosure, may redeem the lands by paying all past due, deferred, and interest payments, together with all costs which have been incurred through the foreclosure of the mortgage, together with interest on such sums at the rate of four percent per annum. In the event of redemption of said lands from a foreclosure of a mortgage, the commissioner shall execute and deliver a contract of sale to the purchaser, his heirs or assigns, in the form prescribed by the board. No redemption shall be permitted after the name of a tax purchaser has been substituted in place of that of the contract holder or mortgagor. No redemption shall be permitted of any contract canceled, or mortgage foreclosed prior to July 1, 1963, excepting only during the period of one year from July 1, 1963.

This section has since been amended to delete the portions about redemption from mortgage foreclosures. S.L.1987, ch. 195, § 3.

up for public sale to the highest bidder. NDCC 15–08–13, 15–07–04, and 15–07–10. These protections of the mortgagor include the right to finance his redemption or repurchase with a contract on favorable terms and conditions so long as the permanent school funds are safeguarded from direct loss. NDCC 15–07–15(5) and 15–08–13. *See Fleck v. State,* 71 N.W.2d 636 (N.D.1955); *State v. Amerada Petroleum Corporation,* 71 N.W.2d 675 (N.D.1955). The claim of a farmer-borrower that he has been deprived of these opportunities must be viewed in this statutory setting, not as a standard commercial mortgage transaction.

■ NDCC 15–07–04 directs that "[a]ny land sold under the provisions of this chapter shall be by public sale except purchases under the provisions of sections 15–07–10 and 15–08–13." While not a model of clarity, NDCC 15–08–13 authorized a post-foreclosure redemption by "such mortgagor, his heirs or assigns, during the period of one year from the date of such foreclosure...." And, "[i]n the event of redemption of said lands from a foreclosure of a mortgage, the commissioner shall execute and deliver a contract of sale to the purchaser, ... in the form prescribed by the board." *Id.* After the foreclosure is final, "such repurchase may be made at any time before such lands are offered at public sale to the highest bidder." NDCC 15–07–10. A "mortgagor or former owner" had the privilege to repurchase "at a price not less than the combined amounts of the original unpaid loan, plus costs paid by the state, and interest unpaid at the time the state acquired title to such lands," with a "cash payment" of "not less than twenty percent of the sale price." NDCC 15–07–15(5).[9] *See Fleck v. State, supra.* A farmer-borrower's preferred opportuni-

ties do not flower only when the foreclosure grows final. Those opportunities are part of a preferential legislative policy which began with the mortgage investment.

Lang's affidavit outlined some of the undetermined factual questions. What policies and procedures, if any, did the Bank of North Dakota employ in the sale of the sheriff's certificate which would justify impairment of the farmer-borrower's post-foreclosure opportunities? Could Lang have redeemed or repurchased in the favorable statutory climate? While the Bank of North Dakota could not forestall a redemption by a junior mortgagee, the Bank had the power, if not the duty, to control disposition of the sheriff's certificate. The consequences to Lang, as the farmer-borrower, differed greatly between a sale to or a redemption by the Bank of Steele. *See Bank of Steele v. Lang,* 399 N.W.2d 293 (N.D.1987); *Lang v. Bank of Steele,* 415 N.W.2d 787 (N.D.1987). Lang should have full opportunity to find out how and why the sale of the sheriff's certificate was made instead of awaiting redemption. If the sale was made without taking into fair consideration post-foreclosure privileges which Lang could have exercised, he was wrongfully deprived of those statutorily commanded opportunities and may be entitled to damages.

Lang's amended complaint sought damages equal to "the difference between the amount owing on his debt and the fair market value of the property." The value of Lang's lost equity, if any, may have been affected by other circumstances, such as part of his second mortgage debt to the Bank of Steele. *See Mike Golden, Inc. v. Tenneco Oil Co.,* 450 N.W.2d 716 (N.D.

---

**9.** NDCC 15–07–15(5) said:

If the mortgagor or former owner from whom the lands were acquired, or his widow, or one or more of his lineal descendants, who in all cases must be a bona fide farmer residing upon the land, not less than three days prior to the public sale of such land, shall make a bona fide offer to repurchase such lands at a price not less than the combined amounts of the original unpaid loan, plus costs paid by the state, and interest unpaid at

the time the state acquired title to such lands, the board of university and school lands shall resell any of such lands to any such bona fide applicant at such sale upon the terms and conditions provided for in this chapter except that upon such private sale the cash payment shall be not less than twenty percent of the sale price.

This subsection has since been repealed. S.L. 1987, ch. 193, § 5.

1990). However, Lang's claim should not have been summarily dismissed as insubstantial. There were genuine issues of material fact remaining. NDRCivP 56. Therefore we reverse the summary judgment and remand for trial.

ERICKSTAD, C.J., LEVINE and VANDE WALLE, JJ., and DONALD T. JORGENSEN, District Judge, concur.

DONALD T. JORGENSEN, District Judge, sitting in place of GIERKE, J., disqualified.